(33 South. 748.)

No. 14,612.

STATE v. POWELL.

(Feb. 16, 1903.)

CRIMINAL LAW—DISCRETION OF TRIAL COURT
—MURDER—JUSTIFICATION—DE-
LAY—INSTRUCTIONS.

1. It is again reiterated that in matters pertaining to delays in criminal causes, such as applications for change of venue, continuances, etc., much reliance is placed upon the discretion of the trial judge, and unless the abuse of such discretion be clearly shown, the decision will not be interfered with.

2. Here there was no charge of illicit relations actually subsisting between the wife of the accused and the man killed, which had been brought to the knowledge of the husband and on which he, in passion and before cooling time, acted. What was sought to be shown was an alleged indecent proposal to the wife, which, it was claimed, had come to the knowledge of the husband the evening before the homicide. Held—even if the charge of indecent proposal were true, to have waited a space of 15 or 18 hours and then sought the man supposed to be guilty and, without a chance to exculpate himself, slay him, is, in the eyes of the law, murder, and testimony tendered to show the alleged indecedent proposal was, under the circumstances, inadmissible.

3. The trial judge properly refused to charge the jury that, being the sole judges of the law and the facts, they had the right to ignore the law given to them by the court, should they deem it proper to do so.

4. Nor can a court be required to instruct the jury in matters of law upon a point which does not arise in the case.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Morehouse; Luther Egbert Hall, Judge.

J. E. Powell was convicted of murder, and appeals. Affirmed.

Levy & Todd and C. Newton, for appellant. Walter Guion, Atty. Gen., and James P. Madison, Dist. Atty. (Lewis Guion, of counsel), for the State.

BLANCHARD, J. Indicted for murder and found guilty without capital punishment, defendant appeals from the verdict, and the sentence of, imprisonment at hard labor for life, predicated thereon.

A bill of exceptions brings up for consideration the ruling of the trial judge with respect to a motion presented for a change of venue.

The bill recites that after the case had been fixed for trial, and on the day for which it was so assigned for trial, and before it was taken up for trial, the defendant offered his motion for change of venue, which motion the court refused permission to file and refused to consider.

In the per curiam part of the bill the judge justifies his ruling by the statement that the homicide was committed on the 10th of January, 1901, and from that time until October 1902—a period of nearly two years—when he

surrendered himself, the accused had successfully evaded arrest by concealing himself in the vicinity of the place where the killing was done; that having been in and about the vicinity of the crime for so long a time he could hardly, at the time he surrendered, have been ignorant of public excitement or prejudice against him, if the same existed; that he was arraigned on Tuesday, October 7th, and the case assigned for trial the following Friday; that at the time no objection was urged and no intimation or suggestion made of any belief on his part as to the existence of any public excitement or prejudice directed against him; that on Wednesday or Thursday following the Tuesday on which he was arraigned and his case assigned for trial, summons for the witnesses for both the state and the defense were issued and served; that not until the day fixed for the trial and after the witnesses had been called under the order of the court and their presence ascertained, and the court had called the case for trial, and the sheriff was ready to draw the jury to try it, did counsel for the defendant offer to file the application for change of venue; that when they did, at that late hour, present it, they asked to have it set for trial at some convenient time in order to procure witnesses in support of the application; that the court thereupon refused to receive the motion or to consider it because, for one reason, it came too late, the case having already been called for trial; that while, under exceptional circumstances clearly appearing, an application such as this might be timely though presented after a case is called for trial, or even at a later stage, there were no such exceptional circumstances in the instant case appealing to the discretion of the court; that, for another reason, no notice had been given to the district attorney as required by law; and that, finally, the court was satisfied the motion was made, merely, for delay.

In matters pertaining to delays in criminal causes, such as applications for change of venue, continuances, etc., much reliance is placed upon the discretion of the trial judges, and unless the abuse of such discretion be clearly shown, the decision will not be interfered with. Knoblock's Crim. Dig., verbo "Change of Venue," p. 405.

See, also, State v. Chambers, 45 La. Ann. 38, 11 South. 944; State v. Foreman, 45 La. Ann. 1048, 13 South. 797; State v. Dent, 41 La. Ann. 1083, 7 South. 694; State v. Curtis, 44 La. Ann. 322, 10 South. 784.

A motion for change of venue is properly overruled when it is manifest that it is made for the purpose of delaying the trial. State v. Fulford, 33 La. Ann. 681.

Where the application for a change of venue is made by the defendant at a late day in the progress of the case, and without timely notice to the district attorney, the application will be denied—was the ruling in State v. Curtis, 44 La. Ann. 322, 10 South. 784.

The application for change of venue in the instant case is held, under the circumstances as set forth by the trial judge, not to have been timely and not to have been made in accordance with the requirements of the statute, and his ruling in refusing to entertain the same is upheld.

A second bill of exceptions states the defendant offered Humphreys and Chancellor as witnesses to prove that the deceased had, a short time before the homicidal assault was made upon him, made indecent proposals to the wife of defendant for criminal conversation with her, and that this fact had been communicated to the accused late in the evening preceding the morning of the killing, which testimony, on objection by the state, was ruled not admissible.

This ruling was not erroneous. Even in case of adultery, the killing of the adulterer deliberately, and upon revenge, is held by Mr. Wharton to be murder. Wharton's Crim. Law (9th Ed.) § 459.

And he adds that evidence of the adultery is only admissible when the time of the husband's discovery of it is brought so near to the homicide as not to allow space for cooling.

Here there was no charge of illicit relations actually subsisting between the accused's wife and the dead man, which had been brought to the knowledge of the husband and on which he, in passion and before cooling time, acted. All that was sought to be shown was an alleged indecent proposal to the wife, which, it was claimed, had come to the knowledge of the husband the evening before the homicide.

On this provocation, even if the charge of indecent proposal were true, to have waited a space of 15 or 18 hours and then sought the man supposed to be guilty and, without a chance to exculpate himself, slay him, is, in the eyes of the law, murder.

It is not infrequently the case that in the extremity of the defense in murder trials those on trial resort to charges against the men they have killed, similar to the one here presented, relying upon the popular sentiment known to hold in just execration offenses against the chastity of women, hoping, through such sentiment, to escape punishment.

In view of this, much reliance should be placed by the appellate courts upon the discretion of the trial judges in the admission vel non of such testimony, and to reverse his ruling, denying its admission, a clear case, under the law, showing the right to have the same before the jury, must be presented.

The position of the law is well stated by Wharton, in section 461 of his 9th edition on the Criminal Law. It is as follows:—

"Persons laboring under a sense of wrong, public or private, real or imaginary, must apply to the law for redress. If there is opportunity to apply for such redress, he who supposes himself aggrieved is guilty of a criminal offense if he undertakes to inflict violent punishment; and he is guilty of murder if he deliberately and coolly kill the person by whom he supposes himself aggrieved. In the highest of all injuries, that of adultery, this, as we have seen, is the law, and a fortiori must this rule be applied in cases of injury less crushing."

The third bill of exceptions brings up the ruling of the judge with reference to a statement made, in the closing argument for the state, by an attorney, who had been employed by relatives of the deceased to assist in the prosecution.

The recital of the bill is that the attorney aforesaid mentioned to the jury what a witness, named Smith, would have sworn to relative to certain statements claimed by the state to have been made to him (Smith) by the wife of the accused after the homicide, if he had been permitted to testify.

Smith, it seems, had been offered by the state to prove what it was the wife had said to him, but the court, on objection by the defense, had ruled against the admissibility of the testimony.

The judge's reasons for his ruling, as embodied in this bill, are, substantially, that the defense relied on, as stated by the court in connection with another bill, was that the accused was legally excusable for the homicide because the deceased had made indecent and insulting proposals to his wife; that the court had, on the objection of the state, ruled out all testimony as to such matters; but the defendant, as a witness in his own behalf, in narrating the circumstances and details of the homicide, had, before objection could be made, said he had killed the deceased because he had heard he was trying to ruin his family; that counsel in argument had contended the defendant had killed the deceased in defense of his wife's honor, etc., and that all the facts could and would have been shown had the defendant been permitted to examine the witnesses Chancellor and Humphreys, and if the wife of the accused had been a competent witness in the case; and that the statement referred to as having been made by the attorney who made the closing argument for the state, was in reply to this contention of counsel for the defendant.

The judge adds that notwithstanding this, if his attention had been called to the matter by timely objection, he would not have permitted the statement made; that counsel for defendant were present and heard the statement, but made no objection; and that it was not until the court had concluded the charge to the jury, and had asked counsel for defendant if they had any special charges to request, that the objection was made.

The judge, continuing, says he thereupon charged the jury specially and emphatically that any statement made by counsel not supported by the testimony, or any statement made purporting to be what some witness would have sworn to had he been permitted to testify, must be disregarded by the jury; that they had sworn to decide the issue according to the law and the evidence; and that such statements made to them by counsel were not evidence and should not receive any consideration.

The reasons of the judge are clear and cogent and completely destroy the objection raised as above.

The fourth bill of exceptions was taken to

the refusal of the judge to give the following as a special charge to the jury, viz.:—

"That the jury are the sole judges of the law and the facts of this case, and that they have the right to ignore the law given to them by the court should they deem it proper ·to do so."

That this was not a proper charge to ask or to give needs no discussion to demonstrate.

The fifth and last bill of exceptions is leveled at the judge's refusal to give another special charge asked by the defense.

It was as follows:—

"Every man has the right to defend his home from any illegal invasion that threatens his children, his wife or his family with personal injury or great moral wrong."

The judge said, in part, in refusing the charge:—

"This statement is so broad and comprehensive in terms that it appears ambiguous and uncertain and does not convey an exact or adequate conception of any particular principle of law. However, there is no principle of law which may be considered as covered thereby which is applicable to the issue involved in this case."

Nor was there. A court cannot be required to instruct the jury in matters of law upon a point which does not arise in the case. Knobloch's Crim. Dig. p. 94, and authorities there cited.

Judgment affirmed.