(77 South. 588)

No. 22648.

STATE v. MORGAN.

(June 30, 1917.  Rehearing on Rule Denied
Oct. 2, 1917.  On the Merits, Oct. 29, 1917.
On Rehearing, Jan. 28, 1918.)

*(Syllabus by Editorial Staff.)*

On Rule to Show Cause.

1. CRIMINAL LAW ☞1110(9)—TRANSCRIPT—
RETURN FOR COMPLETION.

Defendant's rule to show cause why the
transcript should not be returned to the clerk to
be completed would be denied, where the clerk
had since returned all exhibits, documents, etc.,
necessary to an intelligent understanding and
hearing of the case.

*(Syllabus by the Court.)*

On the Merits.

2. CRIMINAL LAW ☞1150 — DISCRETION OF
TRIAL COURT—CHANGE OF VENUE—NUMBER
OF WITNESSES.

The number of witnesses that the defendant
in a criminal prosecution should be allowed to
summon for the trial of a motion for a change
of venue is a matter largely within the discre-
tion of the trial judge.  His ruling in the prem-
ises should be affirmed, unless he abused his dis-
cretion.

3. CRIMINAL LAW ☞1090(1) — RULING OR
CONDUCT OF COURT—BILL OF EXCEPTIONS.

An incorrect ruling or improper conduct on
the part of the trial judge in a criminal case
might be cause for setting aside the verdict,
without being an indication of bias or prejudice
on the part of the judge.  Whether the rulings
were correct or incorrect is to be determined
from the bills of exception reserved to the rul-
ings.

4. JUDGES ☞51(4)—MOTION FOR RECUSATION
—DETERMINATION.

The judge to whom a motion for recusation
is addressed is not compelled to refer it to an-
other judge to determine whether the allegations
in the motion are true, but may overrule the
motion himself, if the allegations do not set
forth a legal cause for recusation.

5. JUDGES ☞49(1)—RECUSATION—PREJUDICE
OR BIAS.

Prejudice or bias on the part of the judge
has not been declared by statute in this state to
be a cause for which the defendant in a crimi-
nal prosecution may demand that the judge re-
cuse himself.

6. JUDGES ☞51(3), 53—RECUSATION—MOTION
—WAIVER—ALLEGATIONS.

In those jurisdictions where bias or preju-
dice on the part of the judge is a cause for
which the defendant in a criminal prosecution
may demand that the judge be recused, the rule
is that an objection, on that ground, to the
judge's presiding in the case, must be made be-
fore any issue has been presented or submitted
by the defendant to the judge for decision, or
the objection will be considered waived.  If the
defendant has discovered, after having tendered
or submitted a preliminary issue to the judge
for decision, that the judge is prejudiced against
him, he must allege, in his motion for recusa-
tion, that he did not know of the prejudice of
the judge, or know the facts on which he bases
his belief that the judge is prejudiced, when he
tendered or submitted the preliminary issue to
the judge for decision.

7. CRIMINAL LAW ☞134(1), 139—CHANGE OF
VENUE—QUESTION—DETERMINATION.

The only question on which testimony is ad-
missible on the trial of a motion for a change of
venue is whether the party applying for the
change of venue can or cannot obtain a fair or
impartial trial in the parish in which the case
is then pending.  If the judge concludes that the
change of venue should be granted, it is for him
to decide which parish in his or an adjoining dis-
trict he will send the case to for trial.

8. CRIMINAL LAW ☞139, 1150 — REVIEW —
VENUE—DISCRETION.

Although the district attorney has no right
to select the parish to which a case shall be sent
for trial, in an application on behalf of the
state for a change of venue, nevertheless, his
selection or suggestion of a particular parish to
which the case should be sent does not deprive
the judge of his discretion in the premises.  The
sending of the case to the parish named by the
district attorney in his application for a change
of venue is not a reversible error on the part of
the judge.

9. CRIMINAL LAW ☞752½, 1090(1)—DISCON-
TINUANCE OF TRIAL—REMEDY OF DEFEND-
ANT.

A district judge is not compelled to stop the
trial of a criminal case before a jury whenever
the defendant or his attorney sees fit to notify
the judge that he intends to apply to the Su-
preme Court for supervisory writs to correct
what he considers an erroneous ruling on the
part of the judge.  The remedy of the defend-
ant or his attorney in such case is to reserve
a bill of exception to the ruling complained of
and urge his complaint on appeal if a verdict be
rendered against him.

10. CRIMINAL LAW ☞419, 420(2)—HOMICIDE
☞166(1)—MOTIVE—HEARSAY EVIDENCE.

The rule excluding hearsay evidence does not
apply to a statement, the mere making of which
is relevant to an issue in the case.  Therefore,
in a prosecution for the killing of a deputy sher-
iff, the evidence against the accused party being
mainly circumstantial, it is permissible for the
state to prove that, several hours before the
homicide. the deputy sheriff was looking for the

accused and asked a witness whether the accused had received whisky from the railroad station that afternoon, and was told by the witness that the accused had received the whisky, and that the officer replied that he would get the accused for bootlegging that night. The evidence was admissible as a circumstance tending to prove motive on the part of the accused party.

**11. CRIMINAL LAW ⟐1159(1)—APPEAL—VERDICT.**

The Supreme Court has not jurisdiction of the question whether the verdict of the jury in a criminal case was contrary to the law and the evidence, even where all of the evidence heard by the jury was reduced to writing and is attached to the bill of exception taken to the overruling of the defendant's motion for a new trial, if the bill does not present a question of law that can be considered and decided separately and apart from any question of fact pertaining to the guilt or innocence of the defendant.

*(Syllabus by Editorial Staff.)*

On Rehearing.

**12. CRIMINAL LAW ⟐121 — CHANGE OF VENUE—STATUTE—DISCRETION OF COURT.**

Under Const. art. 9, providing that an accused shall have the right to a trial by an impartial jury, and Rev. St. §§ 1021–1023, authorizing a change of venue where defendant cannot have the fair trial in the parish where the case is pending, and providing for an application for a change of venue and for notice to the district attorney and for a hearing and determination, the judge has a judicial discretion and must pass upon the evidence and decide whether it justifies a change of venue, in view of the defendant's rights and of the enforcement of the criminal statutes.

**13. CRIMINAL LAW ⟐1150 — REVIEW — CHANGE OF VENUE—DISCRETION.**

Such judicial discretion will always be presumed to have been wisely exercised, and, as a rule, will not be lightly interfered with, though it is reviewable, but where the judge refuses to permit an accused to offer evidence on the application the appellate court cannot say whether he has abused his discretion.

**14. CRIMINAL LAW ⟐134(1)—VENUE—PROOF.**

Where accused objected to a change of venue, but prayed in the alternative that, if the venue should be changed, it be changed to some other parish than that requested by the district attorney, because he believed he could not obtain a fair trial in that parish, he was entitled, in the exercise of his constitutional right to a fair trial before an impartial jury, to offer evidence to that effect and to have such proof put on the record so that the ruling of the judge might be subjected to review, and a deprivation of such right entitles him to have a conviction set aside.

O'Niell, J., dissenting.

Appeal from Fifth Judicial District Court, Parish of Jackson; Cas Moss, Judge.

Pete Morgan was convicted of murder, and he appeals. Conviction annulled, and cause remanded to the district court for parish of Winn for a reopening of trial of State's motion for a change of venue, and for a new trial.

R. E. Milling, of New Orleans, W. M. Wallace, of Winnfield, J. B. Roberts, of Colfax, W. J. Hammon, of Jonesboro, and George Wear, Sr., of Alexandria, for appellant. A. V. Coco, Atty. Gen., and Julius T. Long, Dist. Atty., of Winnfield (Thomas S. Price, of Ruston, and Vernon A. Coco, of New Orleans, of counsel), for the State.

On Rule to Show Cause.

LECHE, J. The defendant and appellant in the above cause, alleging many omissions and deficiencies in the transcript filed herein, prayed for and obtained from this court, a rule on the Attorney General and the clerk of the Fifth judicial district court for the parish of Jackson, to show cause why the said transcript should not be returned to the said clerk to be fully completed in accordance with the prayer of his (relator's) petition.

The Attorney General and the clerk have made a return to said rule, in which they account in detail and categorically, for all of the alleged omissions and deficiencies and in which they pray that said rule be recalled and the writ of mandamus prayed for by relator, be refused.

[1] The transcript originally filed herein on June 5, 1917, consists of two volumes, and on June 11th an additional volume containing all the testimony taken on defendant's preliminary trial was also filed. Annexed to the answer of defendants in rule there was also filed another volume marked as "Exhibit A" containing a lot of original papers and memoranda and in connection therewith

a certificate from the said clerk of the Fifth judicial district court for the parish of Jackson, in which that officer certifies:

"That said Exhibit A contains a full and complete list of the documents and papers forming part of the record of the case of State of Louisiana v. Pete Morgan, No. 2761 on the docket of this court and No. 22648 on the docket of the Supreme Court, and all of which documents and papers are hereto attached, which were not transcribed and made part of the transcript of this case sent to the Supreme Court of Louisiana June 1, 1917, except the testimony taken upon the preliminary trial of the accused, Pete Morgan, which testimony has already been sent to said court by request of Hon. J. B. Roberts, one of counsel for defendant, it being sent by prepaid express on or about the 9th day of June, 1917."

It appears to us that the clerk has substantially remedied all the defects complained of in relator's petition for the writ of mandamus, that he has supplied, in the documents filed in this court on June 11th, those filed on June 16th, and in his return to the rule nisi, all the information necessary to a fair and intelligent hearing and understanding of the case, and that if upon such hearing it should develop that the record is still incomplete to the extent of injuriously affecting relator's rights, the court will yet be in a position to grant him adequate remedy.

For these reasons, the rule herein issued is recalled, and the writ prayed for is denied.

### On the Merits.

O'NIELL, J. The defendant appeals from a verdict convicting him of murder, without capital punishment, and from a sentence of life imprisonment in the penitentiary. The record contains 74 bills of exception. Six are designated, respectively, by the letters, A, B, C, D, E, and F, and the remainder by the numbers 1 to 68, inclusive, except that we do not find a bill numbered 30, and find two numbered 58, one of which is designated as 58a.

[2] Bill of exceptions A was reserved to the refusal of the district judge to allow the defendant to summon as witnesses in his behalf, on the trial of the state's motion for a change of venue, 53 additional witnesses named in his application. He alleged that he intended to prove by the additional witnesses that the state could obtain a fair and impartial trial in the parish of Winn, where the homicide was committed. In the statement per curiam, the judge assigns, as one of his reasons for refusing to allow the defendant to summon the additional witnesses, that he had already issued an order permitting the defendant, as well as the state, to summon 9 additional witnesses, thus allowing each side to summon 15 witnesses. The statement per curiam and the record show that there had been two mistrials of the case, in which more than 130 jurors were examined on their voir dire. And it also appears that, on the trial of a motion filed by the defendant for a change of venue, about 25 witnesses had testified on behalf of the defendant. Their testimony, which had been reduced to writing, was introduced in evidence by the defendant on the trial of the application of the state for a change of venue. Under these circumstances, we think the district judge was justified in refusing to permit the defendant to summon more than 15 witnesses for the trial of the application of the state for a change of venue. It is true, the Act No. 95 of 1876, amending and re-enacting section 1021 of the Revised Statutes, provides that an application by the state for a change of venue may be granted "whenever it shall be established, in any criminal prosecution, by legal and sufficient evidence, that a fair and impartial trial cannot be had in the parish where the case is pending." But our opinion is that the answers given by a number of jurors in their examination on their voir dire, for a previous trial that resulted in a mistrial, is legal evidence on the question whether a fair and impartial trial can be had in the parish in which the case is pending,

and that such evidence may be taken into consideration by the trial judge on the trial of a motion for a change of venue. We are also of the opinion that the trial judge could consider, as legal evidence on the trial of a motion for a change of venue, the fact that there had been two mistrials in the parish where the case was pending. The judge had to exercise some discretion with regard to the number of witnesses to be heard on the trial of the motion for a change of venue, and our opinion is that he did not abuse that discretion.

[3, 4] Bill of exceptions B was taken to the judge's refusal to recuse himself, on the defendant's motion. In the statement per curiam, the judge says that the filing of the motion was disallowed because it was tendered too late, after the motion hour fixed by a rule of court, and after another motion filed by the defendant that day had been passed upon by the judge, and that, in his opinion, the motion did not set forth a cause for recusation, was frivolous, and should have been overruled if it had been tendered at the proper time.

Pretermitting the question whether the fact, merely that the motion hour fixed by a rule of court had elapsed when the motion for recusation was tendered, was a sufficient cause for the judge to decline to consider it, we are of the opinion that the motion did not set forth a cause for recusation. The cause assigned in the motion was that the judge was so biased and prejudiced against the defendant that it was impossible for the defendant to obtain a fair and impartial trial before him. Although alleged as a fact, that was, of course, only a matter of opinion or belief on the part of the defendant or his learned counsel. In support of the allegation of bias and prejudice on the part of the judge, the motion contains certain recitals or allegations of fact, which in our opinion, were not a sufficient basis for the conclusion or belief that the judge was so biased or prejudiced that he could not give the defendant a fair or impartial trial. The first allegation, in that respect, was that the judge had denied a motion on the part of the defendant for a change of venue and thereafter— the defendant believed, and believing, averred—the judge had agreed with the district attorney to grant a change of venue to the parish of Jackson, "where the influence of the judiciary and the kinsmen of the wife of the deceased, as well as the kinsmen of the deputy sheriff, E. M. Scarborough, and the kinsmen of the district attorney reside," as the motion recites. The fact that the judge had denied the defendant a change of venue, and that the defendant believed the judge had afterwards agreed with the district attorney to grant the state a change of venue to the parish of Jackson, was neither a cause for recusation nor evidence of bias or prejudice on the part of the judge. An incorrect ruling or improper conduct on the part of the trial judge might be a sufficient cause for setting aside the verdict and sentence, without indication of bias or prejudice on the part of the judge. Whether the rulings were correct or incorrect must be determined by the bills of exception taken to the rulings. The second allegation of fact, on which the defendant founded his conclusion or belief that the judge was biased or prejudiced against him, was that the judge had refused to release him on bail, notwithstanding—as the motion recites—the first grand jury that met after the commission of the homicide failed to indict the defendant, and notwithstanding there were two mistrials of the case, and notwithstanding the evidence taken at a preliminary hearing before the judge showed that there was no proof, or presumption great, that the defendant was guilty of the crime charged. The determination of the question, whether the defendant should or should not be released

on bail, was a judicial function to be exercised by the trial judge with considerable discretion. His refusal to release the defendant on bail, in the exercise of that discretion, is not to be regarded as evidence of any bias or prejudice on the part of the judge. Other allegations of facts from which the defendant inferred that the judge was biased or prejudiced against him were that he, the defendant, was informed and believed that several petitions had been circulated in the parish of Winn, asking the judge to send the case to the parish of Jackson for trial; that it was at the instance of the judge that the petitions were circulated; that the judge intended to use his personal influence, and to permit the district attorney to use his, and the wife of the deceased to use her influence, and the chief deputy sheriff and chief deputy clerk of court to use their influence in the parish of Jackson, where they resided, to convict the defendant. Some of those allegations were perhaps relevant to the question whether the judge should or should not grant a change of venue. We have no doubt the judge considered all of the relevant facts and circumstances when he granted the change of venue. If he erred in his ruling, the defendant's remedy was to reserve a bill of exception; but the error was not evidence of bias or prejudice on the part of the judge, or a cause for demanding his recusation. There were other allegations to the effect that, in the impaneling of the juries for the two trials that resulted in mistrials, the judge had been more liberal to the state than to the defendant in the matter of sustaining or overruling challenges of jurors for cause. We know from experience that the rulings of judges in the selection of juries are generally unsatisfactory to both sides—until a verdict is rendered, and then only to one side. Errors in such rulings are not in themselves evidence of bias or prejudice on the part of the judge who made them.

[5] We have, thus far, in the consideration of this bill of exceptions, ignored the question whether an allegation that the judge is biased or prejudiced sets forth a cause for recusation. It would be an unreasonable proposition to maintain that a motion for recusation that does not set forth a cause for recusation should be referred by the judge to whom it is addressed to another judge to determine whether the averments in the motion are true. Prejudice or bias on the part of the judge has not been declared by statute in this state to be a cause for which he may be recused. The law on that subject is contained in the Act No. 35 of 1882, p. 48, and in the Act No. 40 of 1880, in so far as that act is not inconsistent with the statute of 1882. It is true, in the case of State v. Banta, 122 La. 235, 47 South. 538, it was held that a motion for recusation, containing the allegation that the judge was a personal enemy of the defendant and was so biased and prejudiced that he was incapable of giving the defendant a fair or impartial trial, set forth something to be considered, and should have been referred to another judge for trial and determination. But the facts of that case were exceptional, and the decision cannot be regarded as maintaining a general principle of law that the allegation, that the judge is so biased or prejudiced against the defendant in a criminal prosecution that he cannot give the latter a fair or impartial trial, sets forth a cause for recusation. Banta's Case was to be tried by the judge, without a jury; the defendant had no remedy by appeal from the judgment unless the judge should see fit to impose a fine exceeding $300 or imprisonment for a term exceeding six months, and, even in that event, the judge's findings on questions of fact pertaining to the guilt or innocence of the defendant would have been final. However, in Banta's Case, this court refrained from expressing an opinion on the question whether, as a general proposition of law, bias or prejudice on the

part of the trial judge, in a criminal case, is to be regarded as "his being interested in the cause." See pages 238 and 239 of 122 La. (47 South. 538). In State v. Bordelon, 141 La. 611, 75 South. 429, the opinion contains a passing remark by which the court appears to have taken it for granted that prejudice on the part of the judge was a cause for which the defendant in a criminal case might demand his recusation. But the dictum is not to be regarded as authority.

[6] In those jurisdictions in which bias or prejudice on the part of the trial judge is, by statute, a cause for recusation in a criminal case, it is generally, if not consistently, held that an objection to the judge's presiding in a case, on that ground, must be made before any other issue is tendered for decision by him, or it will be considered waived. See 15 R. C. L. pp. 539, 540; 23 Cyc. 596, 597.

And, in such cases, it is the rule that if bias or prejudice on the part of the judge was discovered by the defendant after he had submitted any issue for decision by the judge, the defendant must, in order to show a cause for recusation, allege that he did not know the fact on which he bases his belief that the judge was prejudiced until he had submitted the other issue for a ruling.

In this case, it appears that the defendant had submitted a preliminary plea to the judge for decision on the same morning when he filed his motion for recusation; and the judge had ruled on the plea when the motion for recusation was filed. The defendant did not, in his motion for recusation, allege that he came to the belief that the judge was prejudiced against him after he had submitted the preliminary issues to the judge for decision.

Our conclusion is that there was no error in the judge's refusal to recuse himself or to submit the motion to another judge for a ruling on it.

[7, 8] Bills of exception C and D were reserved to rulings of the judge, sustaining objections of the district attorney to an attempt on the part of the defendant to prove, on the trial of the motion of the state for a change of venue, what proportion of the population of the parish of Jackson was made up of relations of the victim of this homicide, or relations of the widow. The purpose of the defendant was to show that the case should not be transferred to the parish of Jackson. The question before the court was not whether the case should be transferred to the parish of Jackson, or to any particular parish, but whether the state should be allowed a change of venue from the parish of Winn. In the trial of a motion for a change of venue, the only question on which evidence is admissible is whether the party applying for the change of venue can or cannot obtain a fair and impartial trial in the parish in which the case is then pending. If the judge concludes that the change of venue should be granted, it is for him to decide as to which one of the parishes in his or an adjoining district he will send the case to. The defendant in a criminal prosecution is not allowed, on a change of venue, to select the parish to which the case shall be sent for trial.

Bill of exception E was taken to the ruling of the judge granting the state a change of venue. In his answer to the motion of the state for a change of venue, the defendant contended that the state could get a fair and impartial trial in the parish of Winn, but, in the alternative, said that he would have no objection to the granting of a change of venue to any other parish than Jackson.

Having concluded that the state was entitled to a change of venue, the judge ordered the case transferred to Jackson parish, because that parish and Winn are the only two parishes in the Fifth judicial district, and because it was more convenient to the witnesses,.

and was less expensive, to have the case tried in Jackson than in any other parish, except Winn. The judge also took into consideration that, if the case was transferred to another judicial district, another district attorney, perhaps not familiar with the facts, would have to represent the state. It is true, the district attorney had no right to select the parish in which the case should be transferred, in his motion for a change of venue. But it was not the selection or suggestion of the district attorney, that the case be transferred to the parish of Jackson, that caused the judge to send it to that particular parish. The district attorney's selection or suggestion of that parish did not deprive the judge of his discretion in the premises. The evidence adduced on the trial of the motion for a change of venue showed that a fair and impartial trial could not be had in the parish of Winn. From the two trials that resulted in mistrials, a factional contention arose between the attorneys and friends of the defendant on the one side and the court officials on the other. And the judge concluded, and we think properly, from the evidence heard on the trial of the motion for a change of venue, that the jurors would not consider alone the question of guilt or innocence of the accused, but would be, to some extent, influenced by their favoritism for one or the other side in the factional contest that had arisen. Our conclusion is that the judge ruled correctly in granting a change of venue, and that he did not abuse his discretion in transferring the case to the only other parish in his judicial district.

Bill of exception F and Bill No. 1 were taken to the overruling of the defendant's objection to going to trial in the parish of Jackson. These objections have been disposed of in our ruling on bill of exceptions E.

[9] Bill No. 2 was reserved to the refusal of the judge to stop the trial when the defendant's counsel gave notice that they would apply to the Supreme Court for writs of cer-

tiorari and mandamus to compel the judge to recuse himself or submit the question of recusation to another judge. The application for the writs was refused by this court. It was filed four days after the defendant's counsel gave notice to the district judge that they would apply for the writs. As the defendant was not entitled to the writs, he was not entitled to have the trial stopped to permit him to apply for them. A district judge is not compelled to stop the trial of a criminal case before a jury whenever the defendant sees fit to notify the judge that he intends to invoke the supervisory jurisdiction of the Supreme Court to correct what the defendant's counsel considers an erroneous ruling. The remedy of the defendant or his counsel, in such case, is to reserve a bill of exceptions to the ruling and urge it on appeal if a verdict be rendered against him.

Bills Nos. 3, 4 and 5 were reserved to rulings sustaining objections to the defendant's counsel asking jurors on their voir dire what was the general feeling toward the negro race in the parish of Jackson. Each of the jurors swore that his prejudice against a negro accused of killing a white man was such that he could not give the accused party a fair or impartial trial. On that ground the jurors were challenged by the defendant, and the challenges were sustained. Therefore there is no merit whatever to the bills of exceptions.

Bill No. 6 has been abandoned by the learned counsel for the defendant.

[10] Bill No. 7 was reserved to the overruling of the defendant's objection to the admissibility of the testimony of a witness named Jennings, who related a conversation that he had with the victim of the homicide, Ernest Howell, 3½ hours before Howell was found by the roadside in a dying condition. The witness testified that Howell, who was a deputy sheriff, asked him, about 3½ hours before Howell was found dying, whether

Pete Morgan had received whisky from the railroad station that afternoon. The evidence showed that the deputy sheriff suspected Pete Morgan of selling whisky in prohibition territory. The witness Jennings testified that he told the deputy sheriff that Morgan had obtained whisky from the depot that afternoon, and that the deputy sheriff replied that he would get Morgan that night. The objection urged by the defendant's counsel was that the evidence was hearsay. Our opinion is that the mere fact that the deputy sheriff was looking for Pete Morgan, intending to arrest him for bootlegging, a few hours before the deputy sheriff was killed, was relevant and admissible in evidence, as a circumstance pointing to the guilt of Morgan. The case depended mainly upon circumstantial evidence. If the mere fact that a certain statement was uttered, that would otherwise be hearsay evidence, is relevant to the issue in a case, without regard to the truth of the statement, it is not subject to the objection that it is hearsay evidence. See Wharton's Criminal Evidence, 1723, 1724, 1739.

Bill No. 8 was taken to the overruling of the defendant's objection to the testimony of the witness Guin, who testified that, about two weeks before the homicide, the accused threatened that he would take the life of Howell if the latter attempted to arrest him. The objection was that the witness could not repeat the conversation verbatim, or even give the substance of it. The witness swore that he could and did give the substance of the conversation. There is no merit in the bill of exceptions. See State v. Hill, 141 La. 67, 74 South. 633.

Bill No. 9 was taken to a ruling denying the defendant's counsel the right to show, on cross-examination of the witness Guin, that the district attorney and an uncle and a cousin of the witness had conspired to get Pete Morgan out of the way, so that they could have control of a certain hog range

142 LA.—25

where Pete Morgan resided. The statement per curiam shows that the defendant's counsel was permitted to show whether the witness had conspired against Morgan with regard to the hog range. The district attorney and the uncle and cousin of the witness referred to were not witnesses in this case. The judge ruled correctly in not allowing the witness to be cross-examined as to any dispute between Pete Morgan and third parties who were not witnesses in the case.

Bill No. 10 is not referred to in the brief of the learned counsel for the defendant, and we assume that it has been abandoned. In fact we do not quite understand the complaint. It appears to be an objection to the judge's having curtailed the cross-examination of a witness. The question ruled out was whether the witness had said "ladies' hats," in answer to a question with reference to certain purchases. There is nothing in the bill of exceptions to show that the question was relevant or admissible.

Bill No. 11 was reserved to the district attorney's calling a certain question, propounded by the counsel for the defendant to a state's witness on cross-examination, a "kangaroo question." The remark was perhaps not altogether respectful to the learned counsel for the defendant, but it was not prejudicial to the accused.

Bill No. 12 is not discussed in the brief of the learned counsel for the defendant, but does not appear to have been formally abandoned. It was taken to a ruling refusing to allow certain witnesses who had served on the jury in a previous trial, to testify that a witness named Rivers had admitted on the previous trial that he had made a mistake in his testimony. The witness acknowledged that he had made the mistake and that he had admitted, on the previous trial, that he had made the mistake. It was an unimportant mistake, and the witness had a right to correct it. When he had admitted all

that, there was no good reason for calling the jurors who had served on the previous trial to prove that the witness had made and acknowledged the mistake.

Bill No. 13 was taken to certain remarks made by the district attorney, to the effect that a certain question propounded by one of the attorneys for the defendant was ridiculous, frivolous, not calculated to aid the court or the jury, but calculated to prolong the trial. There is no showing that the accused was in any manner prejudiced by the remark.

Bill No. 14 recites that one of the counsel for the defendant said to a certain witness for the state, on cross-examination, "Whisky sellers and footpads generally go on Saturday nights." The district attorney urged the objection that whatever statement the counsel had to make in that respect should be addressed as an argument to the jury. The objection was sustained, and we think properly so. The bill is not referred to in the brief of the learned counsel for the defendant, and we assume that they are not relying upon it.

Bill No. 15 was reserved to the refusal of the court, on an objection by the district attorney, to allow the defendant's counsel to ask a witness for the state whether he was under indictment in another parish for stealing $175. The purpose of the question was to attack the credibility of the witness. The objection and ruling were that an accusation of having committed a crime was not proof of the commission of the crime. The bill does not recite that the witness was a material or important witness; nor does it show that any injury was done by the ruling. It does not appear that it could have affected the issues in the case to have shown by the witness that he was under indictment for larceny.

Bill No. 16 was reserved to a ruling of the court sustaining an objection of the district attorney to a question asked a state witness by the defendant's counsel on cross-examination. The objection was that the ruling of the court was in effect telling the jury what the witness had said. In the statement per curiam the judge says that he did not repeat what the witness had said, and we accept the judge's statement as true.

Bill No. 17 was reserved to the refusal of the judge to instruct the deputy sheriff to remain outside of the jury room, and not to mingle with the jurors. It was the duty of the deputy sheriff to attend to the wants of the jurors and to go into the jury room whenever he deemed it necessary.

Bill No. 18 was taken to a ruling permitting a witness to state what the accused said on the night Howell was found in a dying condition. The objection was that the witness could not relate all of the conversation. The witness said that he could give the substance of the conversation. That was all that was necessary.

Bill No. 19 was reserved to a ruling, denying the defendant's counsel the right, on objection of the district attorney, to ask a state witness whether certain persons in another suit, having no relation whatever to this case, had testified that they would not believe the witness on oath. Our opinion is that the ruling was correct. That was not a proper method of impeaching the witness then on the stand.

Bill No. 20 was taken to a ruling permitting a state witness to testify to certain conversations which he had had with the accused. The objection was that the witness could not state the substance of the conversations. The judge says, in the statement per curiam, that the witness did give the substance of the conversations. The ruling was correct.

Bill No. 21 was taken to a remark made by the district attorney in the presence of the jury. The defendant's counsel had asked a

witness for the state, on cross-examination, what the wife of the accused had said on a certain occasion. The district attorney objected on the ground that the evidence would be hearsay, and, in arguing the objection, made the remark:

"Let them bring the negro woman here herself; they have refused to do so twice."

There is nothing in the bill of exceptions to show that the accused was prejudiced by the remark.

Bill No. 22 is not referred to in the defendant's brief. The bill recites merely that a certain witness for the defense, being on cross-examination, was asked by the district attorney about matters and conversations had between the witness and the district attorney, which was objected to by the defendant on the ground that the defendant was not permitted to go into these conversations during the examination in chief. The judge says, in the statement per curiam, that the subject was inquired into in the examination of the witness in chief. There is no merit in this bill.

Bills Nos. 23, 24, 25, 26, 27, 28 and 29, like bill No. 12, were reserved to rulings refusing to allow the defendant's counsel to prove that a witness named Rivers had acknowledged, on a previous trial of this case, that he had made a mistake. The witness, on the trial which resulted in the verdict from which this appeal is taken, acknowledged that he had made the mistake and had admitted making the mistake and had corrected it on the previous trial. There was no necessity for calling witnesses, who had served as jurors in the former trial, to prove that the witness Rivers had made and acknowledged a mistake in his testimony in the previous trial.

Bill No. 31 was reserved to a ruling sustaining an objection by the district attorney to a question propounded by defendant's counsel, on the ground that the question was leading. The question was:

"I will ask you if you didn't swear that in going up to these quarters you went over the spot where Mr. Howell was found?"

We think the question was leading. The defendant's counsel was not denied the right to put the question in a proper form. But the bill is not referred to in the defendant's brief, and we think that it is without merit.

Bill No. 32 was reserved to a ruling permitting the district attorney to ask a witness whether the defendant had tried to bribe another witness. In the statement per curiam it is said that the witness denied that the defendant had tried to bribe the other witness. Therefore no injury to the defendant could have resulted from the question or answer.

Bill No. 33 was taken to a ruling sustaining the district attorney's objection to a leading question propounded to a witness by the defendant's counsel. The question contains 261 words, and covers more than a half of a page of the defendant's printed brief. We think the question was leading. The defendant was not denied the right to interrogate the witness in a proper manner.

Bill No. 34 is a complaint that a certain ruling of the judge, in sustaining an objection to certain testimony, was equivalent to a comment on the testimony. The judge, in the statement per curiam says that he did not comment on the facts; and there is nothing in the bill of exceptions to show that he did.

Bill No. 35 appears to have been reserved to a ruling denying the defendant's counsel the right to ask a certain witness to tell what he and others had observed and said during an experiment which the witness and others had made to determine whether another certain witness could have seen what he said he saw under certain conditions of lights. The statement per curiam shows that the witness was permitted to tell all that he and the others, who took part in the experiment, did, but was not permitted to repeat what the others had said. The ruling was correct.

Bill No. 36 was taken to a remark of the district attorney in the presence of the jury. The remark complained of was that a certain proposition contended for by the defendant's counsel was not and never would be the law. The remark was nothing more than an argument, and was not objectionable.

Bill No. 37 recites that a certain witness for the defendant was asked whether he had ever had a conversation with a certain witness who had testified for the state, "relative to the hitting of Mr. Young on the L. R. & N. R. R." It is stated in the bill that the purpose of the question was to attack the credibility of the witness who had testified for the state. But it does not appear that the question could possibly have affected the credibility of the witness for the state. The objection was that the question and answer sought to be elicited were irrelevant; and, as far as the record shows, the question was irrelevant.

Bill No. 38 was reserved to an objection made by the district attorney. The objection was overruled. There is no merit in the bill.

Bills Nos. 39, 40, 41, 42 and 43 were reserved to the refusal of the court, on objection by the district attorney, to permit jurors who had served in a previous trial to testify in the trial which resulted in the verdict from which this appeal is taken, whether a certain witness had been asked certain questions and had made contradictory statements. The witness admitted, to the jury that rendered the verdict appealed from, that he had made the mistake referred to and had corrected it on the previous trial. There was no necessity for impeaching the witness, after he had admitted having made the contradictory statements. The contradiction was with regard to a matter of no importance whatever, and about which the witness might likely have made a mistake.

Bill No. 44 was reserved to a ruling sustaining an objection made by the district attorney to a question propounded by the defendant's counsel on cross-examination of a witness named Holmes, called by the state in rebuttal. The question was whether the witness Holmes, and a deputy sheriff had beaten a witness named Wheeler and put him in jail because he refused to swear to what the deputy sheriff and Holmes desired him to swear to. It is contended that the evidence was admissible to show that certain statements made by Wheeler to Holmes were not free or voluntary, and also to show prejudice on the part of Holmes. The statement per curiam recites that the incident between the deputy sheriff and Wheeler occurred at another place and time than the place and time of the statements made by Wheeler to Holmes. An inquiry into the difficulty between the deputy sheriff and the witness Wheeler, therefore, was not admissible.

Bills Nos. 45 and 46 were taken to a remark by the district attorney to the judge, in arguing an objection, viz.:

"I just want to show, your honor, that this testimony didn't amount to anything."

The defendant was not prejudiced by the remark.

Bill No. 47 was reserved to the remark of the district attorney, in presence of the jury:

"That is what he wants to do here, to bring his wife into the case without bringing her here."

The remark was made in arguing an objection which the district attorney had made to an attempt to prove what the defendant's wife had said on a certain occasion. The objection, that the evidence was hearsay, was well founded; and it does not appear that the defendant was prejudiced by the remark of the district attorney.

Bills Nos. 48 to 54, inclusive, are virtually abandoned in the brief of counsel for defendant. They refer to remarks made by the district attorney in arguing objections. The remarks were not prejudicial to the defendant.

Bill No. 55 recites that the judge would not allow the defendant's counsel to tell the jury, in argument, how a previous jury who failed to agree on a verdict stood, but refused to sustain the defendant's objection when the district attorney told the jury how the former jury had stood. The statement per curiam contradicts the statement submitted in the bill, and says that the attorneys for the defendant, in argument, told the jury how the former jury stood, but that, when the district attorney attempted to say how the former jury stood, the defendant's counsel objected and the objection was sustained. We are constrained to accept the statement per curiam as correct.

Bill No. 56 discloses that, when the district attorney objected to a certain line of argument by one of the attorneys for the defendant, on the ground that it was not within the record, the judge told the district attorney not to interrupt the argument, that he (the judge) would endeavor to have the attorney argue from the record; and the judge then told the defendant's attorney to proceed with his argument. It is contended that the remarks of the judge conveyed the impression to the jury that the judge was "casting the influence of the judiciary against the accused." We do not think the remarks complained of were prejudicial to the defendant.

Bill No. 57 is virtually abandoned by the learned counsel for the defendant. It recites that the judge instructed one of the attorneys for the defendant, during his argument to the jury, to confine his argument to the record. It does not show that the defendant was prejudiced by the instruction to the attorney. See State v. McCollum, 135 La. 432, 65 South. 600; State v. Anderson, 137 La. 766, 69 South. 167.

Bill No. 58 was taken to a remark made by the district attorney while cross-examining a defense witness. The statement to the witness was:

"I am not asking you to make a speech; just answer 'yes' or 'no'; the case will be argued later."

Although bantering a witness is very improper, it is not necessarily prejudicial to the party in whose behalf the witness testifies. There is no showing of prejudice to the accused in this instance.

Bill 58a is not seriously argued in the defendant's brief. It was taken to the refusal to allow a witness to testify to specific facts tending to impeach another witness. The bill does not furnish enough information for a clear understanding of the complaint, and we are unable to find any error in the ruling.

Bills Nos. 59 and 60 were taken to the overruling of the defendant's objections to evidence introduced by the state to show that the defendant's general reputation for truth and veracity was bad. The defendant had testified as a witness in this case and had thereby put at issue the question of his credibility. State v. Guy, 106 La. 9, 30 South. 268; State v. Fletcher, 127 La. 602, 53 South. 877; State v. Oden, 130 La. 598, 58 South. 351; State v. Anderson, 135 La. 326, 65 South. 478; State v. Suire, 142 La. 101, 76 South. 254.

Bill No. 61 was reserved to the remarks of the district attorney, in his closing argument to the jury:

"Where is the wife of the accused? Why didn't she take the stand and testify to these matters? Under the law she is a competent witness."

In the statement per curiam, the judge says that the district attorney had only begun to refer to the fact that the wife of the accused had not testified in the case, when the defendant's counsel objected, and the objection was sustained, and that the district attorney was not permitted to complete the sentence and did not argue the question any further to the jury. Although the law provides that the neglect or refusal of a person accused of crime to testify shall not create any presumption against him, it

does not make that provision regarding a failure or refusal of the wife of the person accused to testify. See Act No. 157 of 1916, p. 379. We affirm the ruling in this case, however, on the statement per curiam, without expressing an opinion on the question whether the judge should have sustained the defendant's objection to the district attorney's referring to the failure of the defendant's wife to testify. The judge did sustain the objection, and the defendant has no cause for complaint.

Bills Nos. 62 to 68, inclusive, were reserved to the overruling of the defendant's motion for a new trial. One of the grounds for the motion was that a juror named Jeffress was prejudiced against the defendant and was therefore incompetent to serve on the jury, and that he had displayed his prejudice by taking notes of the testimony during the trial to aid him in his effort to persuade the other jurors to agree to convict the defendant. The other ground for the motion was that the verdict was contrary to the law and the evidence. The only witness called by the defendant on the trial of the motion for a new trial was the juror, Jeffress. The district attorney objected to having the juror impeach his verdict and the objections were sustained. Bills Nos. 63 to 68, inclusive, were reserved to those rulings. The rulings are sustained by our jurisprudence. See State v. McCollum et al., 135 La. 444, 65 South. 600, and the list of decisions there cited. ·

In urging the other ground for the motion for a new trial, some of the complaints already disposed of were repeated; e. g., that the case should not have been transferred to the parish of Jackson for trial.

[11] We have no jurisdiction of the question whether the verdict was contrary to the law and the evidence, notwithstanding the defendant's counsel were allowed to attach to their bill of exceptions all of the testimony in the case. The bill of exceptions does not present any question of law that can be distinguished and considered separately and apart from questions of fact pertaining to the guilt or innocence of the accused party.

We have not found any error in the proceedings or rulings complained of.

The verdict and sentence are affirmed.

### On Rehearing.

LECHE, J. The contested issues on rehearing are confined mainly to the legality of the rulings of the trial judge (1) in refusing to permit the filing of or to entertain a motion by defendant to recuse him, the judge; (2) in refusing, on the trial of the state's motion for a change of venue, to permit defendant to show that he could not obtain a fair trial in the parish of Jackson, to which parish the state had prayed to change the venue from the parish of Winn; and (3) in permitting the witness Elzie Jennings to testify as to a conversation had by him with the deceased (Howell) a few hours previous to the homicide.

Although the action of the trial judge on defendant's motion to have him recused received most thorough consideration in our original opinion, the importance of that ruling, considering that it is based upon an apparently conflicting jurisprudence, was one of the causes which induced us to grant the present rehearing. The whole matter was again fully discussed and most elaborately argued by learned counsel. Still believing, however, that the conclusions heretofore reached by us, and fully stated in our original opinion, are sound and correct, it is sufficient to say that we adhere to them.

[12, 13] The second question, which has been much pressed upon our attention in the present rehearing, involves the correctness of the trial judge's rulings on the motion made by the state for a change of venue from Winn to Jackson parish.

The pertinent facts are that defendant was indicted for murder in the parish of Winn on November 24, 1916; his trial was begun on December 11, and concluded with a mistrial on December 21, 1916. On February 23, 1917, he moved for a change of venue from Winn parish to a parish in some adjoining district to be selected by the judge. This motion was overruled. Defendant was then again tried in the parish of Winn on February 26, 1917, and that trial, which was concluded on March 10th, also resulted in a mistrial. On the same day, March 10, 1917, the district attorney then moved for a change of venue, and prayed that the case be transferred for trial to the parish of Jackson. Defendant resisted this motion; he pleaded the authority of the thing adjudged, and, in the alternative, in case the state's motion should be granted, he prayed that the venue be changed to some other parish than the parish of Jackson, for the reason, alleged by him, that public feeling and prejudice against him in said parish of Jackson, would render it impossible for him to secure a fair and impartial trial in that parish.

During the trial of this motion, the judge, on objection made by the state, excluded evidence going to show public feeling or prejudice against defendant in the parish of Jackson, which evidence was offered with a view, we assume, of having the trial transferred, in case the venue was changed, from Winn parish to some other parish than the parish of Jackson. These rulings are brought up by bills of exception C and D. The court finally granted the application of the state for a change of venue, and the case was transferred for trial, as requested by the district attorney, to the parish of Jackson. Whereupon defendant then reserved his bill of exception marked E.

In argument on rehearing, while defendant does not abandon entirely his bill of exception marked E, his main complaint is to the rulings of the judge brought up by bills C and D.

Section 1021, R. S., reads as follows:

"Whenever it shall be established, in any criminal prosecution, by legal and sufficient evidence, that a fair and impartial trial cannot be had in the parish where the case is pending, the judge of any court having jurisdiction of the case may, upon application of the Attorney General or district attorney, for a change of venue, grant such application: Provided, that said case be transferred to any parish or judicial district adjoining the one in which the case is pending."

Section 1022 provides for an application for change of venue on the part of a defendant.

Section 1023 reads:

"Such application may be made orally in open court, or by petition in chambers, and shall be accompanied with proof, under oath, of the party or his attorney, that reasonable notice has been given to the district attorney of such application. Thereupon the judge shall hear the party making the application, as well as the attorney representing the state; and if, on such hearing and examination of the evidence adduced, he shall be of the opinion that the party applying cannot have a fair and impartial trial in the parish where the indictment is pending, the judge shall award a change of venue to the adjoining parish of the same judicial district, or of an adjoining district, and if possible to that in which a district court shall next be held."

These statutes were adopted in furtherance of the well-known principle, first recognized in Magna Charta and now forming part of the Bill of Rights of all constitutional governments, whereby every person charged with crime is entitled to be tried by an impartial jury of his peers. Our own Constitution (article 9) ordains that:

"In all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury."

When, therefore, the lawmaking power vests in the courts the power to change the venue and transfer a criminal trial from one parish to another parish, that power is to be exercised with a view of carrying out and putting into effect this constitutional guar-

anty. If, on account of public feeling, prejudice or any other cause, an accused cannot obtain an impartial trial in one parish, transferring the case to another parish, where prejudice in the public mind is as strong and intense as it is in the parish from which the venue is sought to be changed, would amount to an absolute denial of the constitutional guaranty of a speedy public trial before an impartial jury. In a proceeding under these statutes, the judge is vested with the same judicial discretion which he may lawfully exercise in the performance of any other judicial function. He must pass upon the sufficiency of the evidence and he must decide whether that evidence justifies the request for a change of venue. If he should conclude to grant such change, the law is that he should transfer the case to the adjoining parish of the same judicial district or of an adjoining district and his discretion in selecting the parish to which the case should be transferred is to be exercised in the same manner and only to the same extent. He should be guided with the view of affording the accused the opportunity to be tried by an impartial jury, as well as with the view of protecting the good order of society by a strict and impartial enforcement of the criminal statutes.

The judicial discretion thus vested in the judge will always be presumed to have been wisely exercised and as a rule will not lightly be interfered with, but it is nevertheless subject to review.

[14] But where the judge refuses to permit the accused to offer in evidence the facts by which he should be guided in exercising his discretion, it is then impossible for the appellate court to review his ruling and to say whether he has wisely exercised that discretion or whether he has abused it. That is precisely the situation which is presented in this case. The accused objected to a change of venue, but he prayed in the alter-native, in case the venue should be changed, that it be changed to some parish other than the parish of Jackson, because he believed that he could not obtain a fair trial in that parish. When he attempted to offer evidence to sustain his contention, that he could not obtain a fair trial in the parish of Jackson, the judge would not permit him to do so. It may be that defendant could not have established that fact, and the judge in his per curiam so intimates; but defendant was entitled, in the exercise of his constitutional right to a fair trial before an impartial jury, to offer proof to that effect, and to have such proof put of record in order that the ruling of the judge might be subjected to review. Deprivation of this right entitles defendant to have his conviction set aside and annulled.

We see no good reason to change or alter the conclusions reached by us in our original opinion, on the third question discussed by defendant. on the present rehearing, in regard to the admissibility of Elzie Jenning's testimony as to the conversation he had with the deceased. Our ruling on that bill of exception, marked 7, as also our rulings on all other bills reserved by defendant, appear to us to be correct, and, so believing, we adhere to them.

For reasons already stated, it is ordered that our former ruling on bills of exception marked C and D be reversed, that our former decree be set aside, and that defendant's conviction be annulled. It is further ordered that this case be remanded to the district court for the parish of Winn, that the trial of the state's motion for a change of venue be reopened, to be proceeded with according to law and the views herein expressed, and that defendant have another trial in accordance with law.

O'NIELL, J., adhering to the views expressed in the original opinion rendered in

this case, dissents from the ruling on bills of exception C, D and E, and from the decree annulling the verdict and sentence.