O’NIELL, C. J.
 

 The defendant stands accused of having had $10,707 of stolen money in her possession knowing it was stolen. She is not much over 17 years of age, and is the widow of a desperado, who staged a
 
 *391
 
 spectacular bank robbery in New Orleans, killed a policeman in making his get-away, and was afterwards killed by the officers who undertook to capture him. The case has been the subject of voluminous and sensational newspaper writings.
 

 The district attorney asked for a change of venue, alleging that a fair and impartial trial could not be had in the parish of Orleans. The request was denied, and the state has appealed.
 

 The authority for the motion for change of venue is_in section 1021 of the Revised Statutes, which provides that, on the application of the Attorney General or district attorney, in any criminal prosecution, the court may grant a change of venue and transfer the case to an adjoining parish or judicial district, if it be established by legal and sufficient evidence that a fair and impartial trial cannot be had in the parish where the case is pending.
 

 The only question is whether the district attorney has proven by legal and sufficient evidence that a fair and impartial trial of this case cannot be had in the city of New Orleans. The complaint is that the local newspapers have aroused too much sympathy for the defendant, and that a prominent minister of the gospel added fuel to the flame by preaching a sermon upon the young woman’s plight.
 

 On the trial of the motion for change of venue, the district attorney called, as witnesses for the state, five prominent citizens of New Orleans, who testified that, in their, opinion, the state could not get a fair or impartial trial of the case in this city. Each of the witnesses, however, except one, acknowledged, on cross-examination, that, if he were taken as a juror in the case, he could disregard the newspaper publications, put aside his sympathy for the girl, and try the case fairly and impartially, according to the law and the evidence.
 

 Eleven witnesses called by the defendant's attorneys testified that, in their opinion, a fair and impartial trial of the ease could be had in this city. All except one of these witnesses were subject to jury service; and each one of them acknowledged that, if he were taken as a juror in the case, he could give the state a fair and impartial trial, notwithstanding all that he had read and heard about the case.
 

 If we are to believe the witnesses ,who testified on the trial of the motion for a change of venue, a jury could have been selected from among them who would have given the state a fair, and impartial trial. In fact, according to their testimony, 15 of the 16 witnesses who testified would have been good jurors in the case. And, according to section
 
 41
 
 of article 7 of the Constitution, the case is to be tried by a jury of only 5 members,
 

 Ordinarily, our province is to weigh the evidence rather than to count the witnesses on either side of a case. But, where the testimony of every witness is only his individual opinion, as it is in this case, and where the opinion of any one of them is entitled to as much credit as that of any other, there is not much else for us to do but to count the witnesses. And when we do that we find the trial judge and his very able written opinion on the side of those who believe that a fair and impartial trial of this case can be had in New Orleans. The opinion of the district judge as to whether a fair and impartial trial of a criminal case can be had in the parish where the crime is alleged to have been committed, is always entitled to great deference in the appellate court. See State v. Brittin, 50 La. Ann. 261, 23 So. 301; State v. Powell, 109 La. 727, 33 So. 748; State v. Wheat, 111 La. 860, 35 So. 955; State v. Pointdexter, 117 La. 380, 41 So. 688; State v. Morgan, 142 La. 755, 77 So. 588.
 

 No doubt the newspaper publications complained of by the district attorney — which
 
 *393
 
 were introduced in evidence on the trial of his motion for change of venue — have aroused much sympathy for the defendant, and will make it more difficult than it would otherwise have been to select a jury who will try the case impartially. But, taking a practical view of the matter, we are not at all sure that the difficulty would be avoided or even diminished by a change of venue. According to the statute, if a change of venue should be granted, the case would have to be tried at the parish seat of one of the five parishes in the -two judicial districts adjoining the parish of Orleans. The two judicial districts adjoining this parish are the twenty-fourth and the twenty-fifth. The twenty-fourth is composed of the parishes of Jefferson, St. John the Baptist, and St. Charles; and the twenty-fifth is composed of the parishes of St. Bernard and Plaquemines. The parish seats, in one of which the case would have to be tried, if a change of venue should be granted, are Gretna, Edgard, Hahnville, St. Bernard and Pointe a la Hache. There is no reason to suppose that the New Orleans papers are not read as generally by the citizens subject to jury duty in those towns and parishes as in the parish of Orleans, in comparison with the number of citizens subject to jury duty. Nor have we any reason to suppose that the jurors in those nearby towns and parishes would be less sympathetic, or more likely to give the state a fair and impartial trial, then in the city of New Orleans.
 

 Our exercising jurisdiction in this matter is not to be regarded as establishing a precedent — as deciding or recognizing that there is a right of appeal from a judgment overruling a motion of the district attorney for a change of venue. The state’s right of appeal in this case has not been contested, and we have pretermitted the’question.
 

 The judgment is affirmed.