BLANCHARD, J.
W. M. Graydon and J. H. WTheat, brothers-in-layv, were residents of Catahoula Parish. In May 1902 théy were jointly indicted for the murder of Mark M. Fowlkes in said Parish.
Both of the accused asked for severance and it was granted, the State electing to try Graydon first.
Graydon then moved for change of venue and it was allowed. Whereupon the case as to him was transferred to the Parish of Franklin, in the same Judicial District, and was tried there, the trial resulting in his acquittal.
At the time Graydon asked for a change of venue, the State had already filed a motion for change of venue as to the whole case, withdrawing same as to Graydon, when the latter presented his motion for the change.
This left the State’s motion for change of venue still pending as to the case against Wheat.
This motion set forth that Graydon and Wheat stood charged before the court with the murder of Fowlkes.
That the accused were white men and Fowlkes was a white man.
That it is the opinion and belief of the applicant (the District Attorney) the State could not get a fair and impartial trial of the case.
The prayer was that the venue be changed and the case sent for trial to another parish.
Voluminous testimony was taken on this motion, resulting in a ruling by the trial Judge granting the change of venue and* ordering the ease to the Parish of Franklin for trial.
It was tried there twice. The first time the jury failed to agree; the second trial resulted in the conviction of Wheat of manslaughter.
*863 From a sentence of ten years at hard labor predicated upon this verdict, he appeals.
Ruling ■—The record teems with bills of exceptions.
The first in order is leveled at the Judge’s action in overruling a demurrer filed to the motion of the State for change of venue. This demurrer averred the legal insufficiency of the motion to warrant the relief asked.
While the motion for change of venue should have been drawn with more care, and, perhaps, with more fullness of allegation, and while the trial Judge would have been warranted in sustaining the demurrer to the extent of requiring the District Attorney to amend, we are not prepared to say, in view of the broad scope of the statute relating to applications by the State for changes of venue, that there is reversible error in the ruling refusing to sustain the demurrer.
The law on the subject is found in Act No. 95 of 1870, p. 150, now Section 1021 of Wolff’s Revised Laws of Louisiana, and is' as follows:—“Whenever it shall be .established, in any criminal prosecution, by legal and sufficient evidence, that a fair and impartial trial cannot be had in the parish where the case is pending, the judge of any court having jurisdiction of the case may, upon application of the Attorney General, district attorney, or district attorney pro tempore, for a change of venue, grant such application; provided, that the said case he transferred to any parish or judicial district adjoining the one in which the case is pending.”
The only requirement of this statute is it shall be established by legal and sufficient evidence that a fair and impartial trial cannot be had in the parish where the case is pending. It contemplates a hearing contradictorily with the accused and the srrbmission of evidence going to show or establish that a fair and impartial trial cannot be had, with the right on part of the accused to offer evidence contra. Brouillette v. Judge, 45 La. Ann. 243, 12 South. 134.
It will be observed the statute does not limit the prosecuting officer, in applying for a change of venue, to those cases where he may believe the State cannot get a fair and impartial trial in the parish where the indictment is laid. It is comprehensive enough to include, also, those cases where such officer may believe the accused cannot have a fair and impartial trial in such parish.
In contemplation of law it is as much the duty of a prosecuting officer to insure the man accused of crime a fair and impartial trial as it is his duty to demand such for the State.
A marked distinction is observable in the law relating to applications made by the State for changes of venue and those authorized to be made by the accused.
When the accused makes it, Section 1022 of the Revised Statutes requires the application to be accompanied by an affidavit in which the accused sets forth he has good reason to believe that by reason of prejudice existing in the public mind, or by reason of some other sufficient cause, which must be described, he cannot obtain an impartial trial in the parish where indicted.
The State is not required to present such a preliminary affidavit, nor to set forth existing prejudice in the public mind, or other causes, as grounds for its inability to obtain a fair and impartial trial.
It would seem that all it has to do is to set up, in general terms, its inability to obtain a fair and impartial trial and then establish it by evidence adduced.
So that, when the District Attorney, in the instant case, averred in his motion that in his opinion and belief the State could not get a fair and impartial trial in the Parish of Catahoula, he set forth sufficient, in view of the statute, to warrant going into a general inquiry touching the issue thus raised.
His demurrer being overruled, defendant filed a motion to strike from the files the motion for phange of venue on the ground that it was not called up by him for action at the May term of court at which it was filed, nor at the July term following, and because of the fact that at the August term of the court the District Attorney caused the case against defendant to be fixed for trial notwithstanding the pendency of the motion for change of venue.
From this is argued and urged that the State had abandoned the attempted change of venue, and defendant complains of the ruling denying his motion to strike from the files.'
We do not think there was error here.
We are not apprised why the motion for *865 change of venue was not tried at the two preceding terms of court. The defendant had been duly notified of its filing at the time it was presented. The law required this.
Thereafter he was in court as to that motion until it was disposed of. If the State were dilatory in the matter of its trial, it was his right to urge trial, and to have objected to any further steps taken in the case until the motion was disposed of. If he did this, the record does not show it.
Nor are we informed of the circumstances under which the case was set for trial prior to disposing of the motion for change of venue. It may be, as is usual at the beginning of terms of court in the country, the docket was called and eases ripe for action assigned for trial in keeping with the customary practice. Or, it may be the assignment of this case for trial meant for trial of the preliminary matter at issue, to wit:—the motion for change of venue. Or, the District Attorney may have caused the case to be set down for trial on a certain day, intending, when the time came, to exercise the option either to go to trial on the application for change of venue, or to waive it and go to trial on the merits, as his judgment might then dictate.
And if defendant objected to this proceeding, or to this uncertainty of action on part of the District Attorney, he should then and there, when the case was set for trial, have raised his objection and demanded of the State to disclose its purpose—whether it intended to abandon the motion for change of venue, or whether its setting of the case for trial meant for trial of the motion, or for trial of the merits of the prosecution itself.
We are of the opinion that, under the circumstances, no abandonment of the motion for change of venue resulted from assigning the case for trial on a given day.
With regard to the application, itself, for change of venue, the trial Judge, in an elaborate and forceful opinion, reviewing the mass of evidence adduced, reached the conclusion that the motion should be granted and, accordingly, ordered the ease transferred to the Parish of Franklin.
Our reading of the testimony has not led to the conclusion that he erred in this. A motion for change of venue is left largely to the sound discretion of the trial court, weighing and judging the evidence submitted to him, and his action in granting or refusing the change will not be disturbed unless manifestly erroneous.
The State offered at the trial the depositions of Philip Holstein taken at the preliminary examination. The case was on trial in Franklin Parish. Holstein resided in Catahoula Parish and was, at the tinie of the trial in Franklin Parish, sick at his home in Catahoula. This was shown by the certificate of his attending physician, which was ' to the effect that he was unable to attend on the court at its then term.
Holstein had been personally served with the State’s subpoena and his answer was the certificate aforesaid of his physician.
He was not present, therefore, when the case was called for trial. In view of his illness, made known to the court by his physician, he could hardly be attached and brought to court from his home in Catahoula, though it appears an attachment was asked for by the State, issued and was placed in the hands of the sheriff.
The State, on the ground of his absence and that of other witnesses, made application in due form to continue the case, alleging what was expected to be proven by the absent witnesses, the expectation of procuring their attendance at the next term of court, etc. Dater, the State, considering that under the state of facts existing it had the right to offer the depositions of Holstein taken at the preliminary examination, withdrew the application for continuance and announced ready for trial.
Trial was gone into and in due course the depositions were offered to be read to the jury. Defendant objected and to the overruling of his objection reserved a bill.
He urges that the State, by abandoning its application for continuance, which, it is claimed, meant its right to procure the attendance of the witness, waived any right it might have to offer the depositions previously taken. Further, that the State has no legal right to offer the deposition of a witness until it is shown that it has exhausted all reasonable, legal remedies to procure the personal attendance of the witness.
*867 He also objected that tbe paper claiming-to be the deposition of Holstein was not properly authenticated, etc., and that the evidence upon which the right was claimed to offer the deposition was insufficient to justify its introduction.
It is shown that the testinmny of Holstein was properly taken at the preliminary examination; that it was so taken there in the presence of defendant and his counsel, with full opportunity of cross-examination; that it was signed by the witness and by the deputy clerk who took it down; that it was taken in the presence of the Judge of the District Court, who was presiding at the preliminary examination; and that the testimony so taken was the same against the admission of which, in evidence, defendant objected in the bill of exceptions now under consideration.
This was quite sufficient to authenticate the depositions and warrant reception of the same as evidence, if otherwise legally admissible. State v. Wiggins, 50 La. Ann. 332, 23 South. 334; State v. Allen & Carter, 37 La. Ann. 686.
Counsel for the accused calls attention to the difference in the language used in the Constitutions of 1879 and 189S in the articles found in the Bill of Rights relative to the right of a person accused of crime to be confronted with the witnesses against him, and contends that the words found in article 9 of the later Constitution, to wit:— ‘•The accused in every instance shall have the right to be confronted with the witnesses against him” made a new departure, and that now in no case and under no circumstances can depositions anteriorly taken be offered in evidence against an accused.
This contention underwent investigation in State v. Kline, 109 La. 603, 33 South. 618, and was distinctly negatived there. We adhere to that ruling.
With regard to the question of fact, as to the inability of the witness Holstein to be present because of illness, this must be shown to the satisfaction of the Judge, who tries the case, and much reliance is placed upon his discretion in such matters.
The best evidence, of course, would be the testimony of the physician under oath. But in the instant case, the physician and the witness were in another parish, and it would be extreme to require that the physician, should travel from such other parish to the-one where the trial is being had, to testify to his patient’s condition. And the trial court could hardly be expected to be delayed until the depositions of the physician-could be taken in the ordinary way.
So that, from the very necessities of the case the trial Judge must admit the physician’s certificate, being satisfied of its genuineness and of the truth of its contents, and this he was.
Mr. Wharton, in his Criminal Evi. (9th Ed.), at section 228 says:—
“As the testimony taken in a former trial cannot be read if the witness is obtainable, the question arises, what proof is requisite-to establish the fact that the witness cannot be obtained.”
And on the next page, under section 230. he quotes:—
- “It is a question for the judge at the trial to determine whether the proof of a witness being so ill as not to be able to travel is-sufficient; and the Court of Criminal Appeal will not interfere with the exercise of his-, discretion.”
He cites in support of this R. v. Stephenson, 1 L. & C. 165, 34 L. I. M. C. 147. These-are English eases.
And he quotes from another case, which, commenting on the then recent English statute on the subject, said:—
“And there can be no doubt that a judge-would now exercise his discretion and decide whether, in the interest of justice, it were better to read the deposition or to adjourn the trial in order to obtain the oral testimony of the witness.”
Citing R. v. Tait, 2 F. & F. 553; R. v. Hogg, 6 C. & P. 176; R. v. Wilshaw, C. & M. 145.
Conceding that the State had the right to-a continuance on the ground of the absence of the witness Holstein and applied for such continuance, nothing prevented its abandoning the application for the continuance before the court had acted on the same and consenting to go to trial. And the fact of such abandonment would not militate against the reception in evidence of the depositions taken on the preliminary examination, provided such depositions were legally admissible—that is -to say, a state of facts existed- *869 and was shown which, under the law, warranted their introduction in evidence.
So that the question is, did the facts heretofore stated justify their admission?
It is not alone where the witness is dead, or permanently absent from the State, that his testimony, taken on preliminary examination, with opportunity for cross-examination, can be offered in evidence.
This Court recognized a much broader rule in this regard in State v. Harvey, 28 La. Ann. 106, where it was held that if due diligence has been used and it is made manifest that the witness has been sought for and cannot be found, or if it be proved that he was subpoenaed and fell sick by the way, his deposition may be read, for that, in such case, he is in the same circumstance as to the party that is to use him as if he were dead—citing Archibald’s Crim. Practice and Pleadings (7th Ed.) vol. 1, p. 479, note (1); and where it was further held that if the accused had the witness “face to face” on the preliminary trial and had the opportunity to cross-examine him, his constitutional right is not violated by the introduction, on the final trial, •of the deposition of such witness, where it is shown that the witness cannot be produced.
In the instant case the witness was too ill to attend when the court’s subpoena reached him, and when the trial was had, which is the equivalent of falling sick “by the way,” as put by Mr. Archibald.
The ruling in 28 La. Ann. was sustained in State v. Granville, 34 La. Ann. 1088, which was an appeal from St. Landry Parish. There the defendant complained of the admission, over his objection, of the testimony of one Bacon, a witness for the State, taken at a preliminary trial. The sheriff’s return on the subpoena to Bacon was that he was unable to serve it, being reliably informed that Bacon had left the parish. At the trial the State offered and the court received, over defendant’s objection, parol testimony establishing that Bacon was lying sick in a hospital in New Orleans.
On this state of facts, this Court said:—
“The admissibility of this last mentioned evidence, and its sufficiency, in connection with the sheriff’s return, to authorize the reception of Bacon’s testimony at the preliminary trial, are fully sustained by the authority of State v. Harvey, 28 La. Ann. 105.”
In State v. Laque, 41 La. Ann. 1072, 6 South. 787, the witness had, after the holding of the preliminary examination, removed to an adjoining parish in the same judicial district and could be no longer found in the parish in which the crime had been committed and in which the trial was being-conducted. His testimony taken on the preliminary hearing was not admitted, the Court saying:—
“Such testimony is admissible only under a showing that the witness had either left the State, or that, after diligent search, he could not be found, or that he had been summoned, but that he had been taken sick on the way.”
Citing in support State v. Harvey, 28 La. Ann. 105.
Here again the witness being taken sick “on the way,” after having been served with the subpoena, was held ground sufficient to admit his previous testimony.
The doctrine of this case is sustained by Mr. Bishop in his work on Criminal Procedure (4th Ed.) §§ 1194 and 1195, where he says one can be convicted of a crime only on the testimony of witnesses whom, now or on a previous occasion, he has or had the opportunity of meeting face to face and cross-examining, and that while the rule is the evidence should be delivered personally and orally before the same triers who are to pronounce the verdict of guilty or not guilty, yet of necessity this rule is subject to exceptions as for instance, if the witness be dead, or is insane, or is kept out of the way, or is too ill or infirm to come to court, etc.
Judge Cooley, in his work on Constitutional Limitations (5th Ed.) 389, speaking of the constitutional requirement that the accused shall be. confronted with the witnesses against him, declares that if the witness was sworn before the examining magistrate and the accused had the opportunity then to cross-examine him, it seems' allowable to make use of his deposition if the witness has since died, or is insane, or sick and unable to testify, or has been summoned, but appears to have been kept away by the opposite party.
*871 See also Rice on Orim. Evidence, § 243 et seq.
Wharton’s Orim. Evidence (9th Ed.) § 230, after referring to the dependence of the question upon local statutes, declares:—
“But whenever a deposition has been duly taken in a preliminary procedure, it can he received in subsequent proceedings against the same defendant, the witness being unobtainable.”
And in a note appended to section 230, the learned author, refers to the English practice and gives this:—
“In R. vs. Boucher, where testimony was given by the witness’s husband, without medical evidence, that she was pregnant, but he could not state how far advanced she was, and that she was attending to her household duties as usual, and he stated that, a fortnight before, he had driven her some distance and she had suffered somewhat in consequence, Bramwell, B., admitted the deposition. 3 F. & F. 285.”
Also this:—
“Where a witness came to the assizes, but returned home by the advice of a medical man, who deposed that it would have been dangerous for the witness to remain, Parke, B., held that the witness was ‘unable to travel’ within the meaning of this section, and allowed his deposition to be read. R. vs. Wicker, 18 Jur. 252.”
With us in Louisiana, the rule of evidence in criminal trials as well as forms of indictment, method of trial, etc., must be according to the common law of England as it existed in 1805, unless otherwise provided. State v. McNeil, 33 La. Ann. 1333.
At that time (1805) the English statutes on the subject of depositions in criminal mat'.ters, taken before coroners and magistrates, were 1 & 2 Philip and Mary, c. 13, § 4, 5 and 2 & 3 Philip and Mary, c. 10. Bishop on Crim. Procedure (3d Ed.) vol. 1, § 1198; State v. McNeil, 33 La. Ann. 1334. These statutes of Philip and Mary were received as common law in Louisiana. 33 La. Ann. 1334; Bishop, Crim. Procedure, § 1198. They provided for the taking in writing of the examination of a party accused of felony and of the depositions of others cognizant of the facts and circumstances of the case, and directed the same to be certified to the court before which the further proceedings were to take place. Bishop, § 1198.
The statutes of Philip and Mary were silent as to what should be done with the certified examinations, but it seems the construction of the common law upon them made them competent as evidence at the later trial on proper showing made. Bishop, §§ 1198-1199.
“The entire doctrine of 'the common law as to depositions before committing magistrates,” declares Mr. Bishop in section 1201 of the 3rd Ed. of his work on Criminal Procedure, “when taken pursuant to statutes like the former English ones, is epitomized in 11 & 12. Vict. c. 42, § 17, now in force.”
And then he quotes (same section) as follows:—
“If, upon the trial,” etc., “it shall be proved by the oath or affirmation of any creditable witness that any person whose deposition shall have been taken as aforesaid is dead, or is so ill as not to be able to travel, and if also it be proved that such deposition was taken in the presence of the person so accused, and that he or his counsel or attorney had a full opportunity of cross-examining the witness, then, if such deposition purport to be signed, by the'justice by or before whom the same purports to have been taken, it shall be lawful to read such deposition as evidence in such prosecution, without further proof thereof, unless it shall be proved that such deposition was not in fact signed by the justice purporting to sign the same.”
And in the next section (section 1204) Mr. Bishop declares:—
“The law, as expounded in the foregoing sections, is not in conflict with the constitutional provision securing to an indicted person the right ‘to meet the witnesses against him face to face.’ At the time when this doctrine gives opportunity for cross-examination, he does or may thus meet them.”
We conclude the trial Judge did not err in permitting the deposition of Holstein to be read to the jury.
Defendant next complains that he was not permitted to elicit from the witness Graydon, who had been the co-defendant of Wheat, when on the stand as a witness for Wheat, an answer to the question:—
“When you were on trial for the killing of *873 Mark M. Fowlkes did you not testify as a witness for yourself that you killed Fowlkes in defense of your own life?”
The State objected on the ground that' 'it was an attempt to get before the jury former statements and declarations of the witness made by himself to other parties, and on the further ground that it was an attempt to bolster up and support his testimony, when his character (as a witness) had not been attacked.
The argument of defendant, in his brief, on this bill of exceptions, shows that the purpose of the question was to elicit an answer that would tend to strengthen the testimony which Graydon had just given in behalf of Wheat.
In another bill of exceptions found in the record, the trial Judge states there was nothing to show on what grounds the jury had acquitted Graydon, and adds that he was tried and acquitted on the general plea of not guilty.
The statement made by Graydon as a witness in his own behalf when he was on trial for the murder of Fowlkes, that he had killed the latter, but had done so in self defense, was clearly inadmissible as evidence in favor of Wheat when the latter was being tried for the murder of Fowlkes; and the fact that it was .wanted by the defense in support of other testimony, which Graydon had given on the witness stand, did not take it out of the rule of inadmissibility.
Defendant next complains of the following paragraph in the written charge of the court to the jury, viz:—
“And where two parties are charged in one indictment with a crime as .principals, and they obtain separate trials, the fact that one of the parties so charged as principal has been tried and acquitted does not authorize the acquittal of the other party charged, if the jury is satisfied under the evidence beyond a reasonable doubt of the guilt of such other party. Tou have no right to pay any attention to, or give effect to, the verdict of the jury in any other case in arriving at your verdict in this case.”
This deliverance of the Judge, taken in connection with the full charge, contains nothing of error. Considered even by itself, independent of the full charge, we fail to discover reversible error lurking in it.
The same is true of another paragraph of the charge to which objection was likewise made. It is as follows:— ■
- “If, after careful and impartial consideration of all the evidence in the case, you should find and believe that tlie accused took no part in the killing, and was not present for the purpose of aiding and assisting in such killing, but was simply a by-stander, or looker-on, or if you should entertain a reasonable doubt, such as I have explained to you, as to whether he took any part in the killing, or as to whether he was present for the purpose of aiding and assisting in the killing, then you should give him the benefit of such reasonable doubt and acquit him.”
It is claimed that in this deliverance the Judge erred, and that he misled the jury by the manner of stating the proposition. Thus, “if you should find and believe that the accused took no part in the killing and was not present for the purpose of aiding and assisting in such killing, etc.,” whereas the proper way of stating it would have been “unless you find, beyond a reasonable doubt, that the accused did take part in the killing, and was present for the purpose of aiding and assisting in such killing, etc.”
The argument is that the reasonable doubt in this charge is to a negative, when the law gives the accused the benefit of a reasonable doubt as to an affirmative fact.
We hold the manner adopted by the judge of stating the proposition not objectionable.
A further objection is leveled at this charge, to-wit:—
“If, after a careful, honest, and impartial consideration of all the evidence in this case you should find and believe, beyond a reasonable doubt, that the accused shot and killed the deceased in the manner and form as charged, of that he aided and assisted in such killing, or that he was present for the purpose of aiding, abetting, and assisting in the killing of the deceased, in the manner and form charged in the indictment, and that such killing was done with malice aforethought, either express or implied, then it would be your sworn duty to find the accused guilty, and you can do so as charged without capital punishment.
“If, after a careful and impartial consideration of all the evidence on the case, you should find and believe, beyond a reasonable *875 clonbt, that the accused killed the deceased, or that he was present aiding, abetting, or assisting in such killing, or that he was present for the purpose of aiding, abetting, and assisting in the killing of the deceased, and that such killing was unlawful, and without legal excuse, or justification, but was the result of a sudden violent impulse of passion, caused by a serious or highly provoking injury inflicted upon the person doing the killing, which provocation was not caused by mere words, nor offensive nor insulting language, but was sufficient in the minds of the jury to excite an irresistible passion in a reasonable person, then it would be your duty to find the accused guilty of manslaughter.”
We find nothing to condemn in this deliverance.
Another objection is leveled at this declaration of the Judge:—
“An accomplice is strictly defined as one who is associated with others in the commission of a crime; and where two or more parties are charged with the commission of a crime jointly, and they are tiled separately, in such event either becomes, under the law, a competent witness for or against the other; and, where such witnesses testify, it is the duty of the jury to take their testimony, and weigh it with all the other evidence in the case, under the general rule applicable to all other witnesses, and to give to the evidence of such witnesses just such weight as the jury thinks it fairly entitled to, in view of all the other evidence, and in view of his interest, if he has any, in the result of the prosecution.”
There is nothing to find fault with in this statement of the law.
An objection was raised to this portion of the charge, viz:—
“Should you find and believe from all the evidence in this case, beyond a reasonable doubt, that the accused was guilty as charged in the indictment, and that such killing was done with malice aforethought, and in pursuance and furtherance of a common design, agreement, or concert of action, between the accused and another party, and that the accused was present, aiding, assisting and abetting, or advising and encouraging, or that the accused was present with the intent and for the purpose of aiding, abetting, and assisting, or of advising and encouraging, as might be necessary in carrying out a common design, intention, and purpose, then he is equally guilty with the actual perpetrator of the homicide, although you may find that he did not fire a shot, or took no active interest in the difficulty.”
We fail to appreciate the force of the argument presented by defendant’s counsel to show this to be an erroneous charge.
Counsel for the defendant had, themselves, argued to the jury what they considered the law relative to a conspiracy to murder was, and had, doubtless, given their views as to what, under the facts of the case, the jury’s conclusions in respect thereto, should be. It was, therefore, entirely proper for the Judge to charge the law of conspiracy as he thought the same should be given to the jury, and he charged it correctly. He stated, however, in the bill of exceptions taken to his ruling refusing a new trial, that he does not think the question of conspiracy was considered by the jury, and their verdict of manslaughter would seem to confirm his belief.
A further1 objection was made to this declaration of the Judge:—
“And if a party who originates and provokes a difficulty forfeits the right of self-defense, no person present, aiding, abetting, and assisting such party, with full knowledge of the facts, can plead self-defense.”
We find nothing objectionable in this charge. It is sound law, and we must needs trust to the discretion of the judge the necessity and desirability of it, considering the ease as unfolded to the jury by the evidence adduced and by argument of counsel.
A number of special charges were asked by counsel for the accused and those denied were brought up by bills of exception, the regularity of which the State questions because written up and signed too late.
It is not considered necessary to go into an examination of the question thus raised in view of the conclusion reached on the merits of the charges themselves.
All have been examined and it is not found that reversible error was committed in refusing them, or any of them, and it is considered that no useful purpose would be sub-served in reciting at length in this opinion the special charges asked, nor discussing them m extenso.
We have thus gone through with all the *877 objections discussed in the brief of counsel for defendant.
There are many bills of exception found in the record that are not referred to in the brief.
It was stated at the oral argument that these were not to be considered waived because not discussed.
We have examined them and found in them nothing to warrant sending the case back.
For the reasons assigned the judgment appealed from is affirmed.
MONROE, J. I am of opinion that the evidence as to sickness of the witness Holstein was improperly admitted, and hence that his testimony, previously taken, was improperly admitted. I therefore dissent.