[Crim. No. 2845. Fourth Dist., Div. One. Dec. 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ROBERT McINTYRE, Defendant and Appellant.

Garber & Sokoloff, Peter J. Paoli and Ellis J. Horvitz for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—A jury found James Robert McIntyre guilty of five counts of child molestation (Pen. Code, § 288). Before judgment, the trial court committed him for sexual psychopathy. He appeals from an order denying his motion for a new trial (Pen. Code, § 1237, subd. 2).

McIntyre concedes the evidence sufficiently supports the five guilty verdicts. In substance, he committed lewd and lascivious acts upon three girls, ages 7, 10 and 10.

Testifying, McIntyre admitted patting the three girls and kissing one of them; but he claimed he did these things inno-

cently. To rebut this claim, the district attorney called a rebuttal witness, an 8-year-old child, not a prosecutrix. McIntyre attacks her testimony, claiming: 1) the trial court improperly curtailed his *voir dire* for competency examination of the witness; 2) the witness was not competent to testify; and 3) the witness' testimony was improper rebuttal. We set forth his entire *voir dire* examination of the witness:

"By Mr. Garber [defense counsel]: Q (Name), how old are you?

"A Eight, going on nine this week.

"Q What school do you go to?

"A St. Columbus.

"Q The same as your sister?

"A Yes.

"Q What grade are you in?

"A Third.

"Q Do you know what these proceedings are that are involved in this court proceeding?

"Mr. Williams [district attorney]: I believe that is an unfair question, your Honor.

"The Court: That is a little unfair to ask a little child what the nature of the proceedings are in a courtroom.

"By Mr. Garber: Q Do you know Mr. McIntyre?

"A Yes.

"Q Do you know he has been accused of a crime?

"A Yes.

"Mr. Williams: It is improper; I move to strike.

"The Court: I am not certain that that is a matter of the qualification of this witness as a witness. It is more or less on other grounds.

"By Mr. Garber: Q You have known Mr. McIntyre for some time?

"A Yes.

"Q Do you remember things that——

"Mr. Williams: Objection, your Honor. He is getting into——

"Mr. Garber: Does she remember? Has she the ability to recollect?

"Mr. Williams: Withdraw the objection.

"The Court: You may proceed.

"By Mr. Garber: Q Do you remember things that happened over at McIntyre's?

"A Yes.

"Q Say six months ago?

"A Yes.

"Q Do you know what it is to swear to the truth?

"A Yes.

"Q Do you know the difference between the truth and a lie?

"A Yes.

"Q Do you have any fear of punishment if you tell a lie?

"A Sometimes.

"Q What do you think happens when you tell a lie?

"A Well, most of the time I get a spanking.

"Q. Do you have fear of getting a spanking now if you tell a lie?

"A No.

"Q Do you think anything will happen to you if you tell a lie?

"A Most of the time I do.

"Q How about now?

"A Yes.

"Q What is going to happen to you if you tell a lie?

"A I don't know.

"Q You don't think you will get a spanking?

"A No.

"MR. GARBER: I have no further questions, your Honor.

"THE COURT: Do you have any questions?

"MR. WILLIAMS: No, your Honor.

"BY THE COURT: Q Do you go to Sunday School?

"A No, I go to church.

"Q And what are you instructed in church, anything in relation to right and wrong?

"A Yes.

"Q What are your instructions in your church about right and wrong?

"A Well, if we are wrong, we will hurt our soul.

"Q What are your instructions in relation to truth or lies?

"A Well, lies, they are supposed to, our parents are supposed to spank us."

 The tests of competency are whether "a child possesses sufficient intelligence, understanding and ability to receive and fairly accurately recount his impressions" and whether the child "has an understanding of the nature of an oath and a moral sensibility to realize that he should tell the truth and that he is likely to be punished for a falsehood. . . ." (*People* v. *Loignon,* 160 Cal.App.2d 412, 418 [325 P.2d 541].)

 Applying these tests, the *voir dire* examination does not

support McIntyre's contention the trial court improperly curtailed the examination. Neither the witness' knowledge of the nature of courtroom proceedings nor her knowledge of the charges relate to (1) her ability to receive and fairly accurately recount impressions, or (2) her moral realization of the necessity of telling the truth. ■ On this point, McIntyre points out the trial court, before the examination, said it would not allow questions about material facts of the case. This was proper. On *voir dire* for competency, what the witness remembered about McIntyre's conduct was irrelevant to the question of whether she could remember and truthfully recount at all.

■ The trial court did not abuse its discretion in determining the witness competent to testify. Although McIntyre stresses her negative answer when asked if she feared getting a spanking if she told a lie now, her examination also established she knew the difference between a lie and truth, she thought something would happen if she told a lie now, although she did not know what, and her soul would be hurt if she lied. This amply demonstrated a moral sensibility to realize she should tell the truth and punishment was likely if she lied. (See *People* v. *Scholl*, 225 Cal.App.2d 558, 561 [37 Cal.Rptr. 475].)

■ The district attorney properly called the child as a rebuttal witness. McIntyre's testimony raised the issue of his innocent or lust-arousing intent. The witness testified McIntyre on at least five occasions wanted to kiss her between the legs and stuck out his penis. This testimony properly rebutted the claim of innocent intent put in contested issue by McIntyre's testimony (Pen. Code, §§ 1093 and 1094; *People* v. *Kelley*, 66 Cal.2d 232, 240-241 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Westek*, 31 Cal.2d 469, 480-481 [190 P.2d 9]; *People* v. *Carter*, 48 Cal.2d 737, 753-754 [312 P.2d 665]).

McIntyre contends the trial court erroneously refused to allow a qualified child psychiatrist to express his expert opinion about the mental state and credibility of a child prosecutrix. McIntyre wanted to ask the psychiatrist hypothetical questions developed from facts in evidence about the child. The psychiatrist had not examined the child.

■ Generally, psychiatric testimony for the purpose of impeachment is inadmissible (*People* v. *Bell*, 138 Cal.App.2d 7, 12 [291 P.2d 150]; *People* v. *Dye*, 81 Cal.App.2d 952, 963 [185 P.2d 624]; *People* v. *Champion*, 193 Cal. 441, 447-448 [225 P. 278]). This rule reflects, in part, the many dangers

involved when a jury receives psychiatric testimony.[1] In *Ballard* v. *Superior Court,* 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838], the California Supreme Court, recognizing the danger of psychotically induced, difficultly disproved sex charges, determined trial courts have the discretion in sex offense prosecutions to order the prosecutrix to submit to psychiatric examination. After an examination, and in the exercise of its discretion, the court may permit the examining psychiatrist to testify. If the prosecutrix refuses to cooperate with the psychiatrist, defendant may comment on the refusal.

*Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, represents a determination that the need for psychiatric testimony about the credibility of a prosecutrix in a sex offense prosecution may outweigh the dangers of such testimony. This determination, this balance, requires, when psychiatric testimony is admissible, that the best available psychiatric testimony be obtained. In *Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 175, the Supreme Court observed: " '[M]ost psychiatrists would say that a satisfactory opinion can only be formed after the witness has been subjected to a clinical examination' (citations)." Probably a better opinion can be formed after examination than without examination.

We hold that where a defendant wants to introduce psychiatric testimony impeaching a prosecutrix in a sex offense prosecution, he must request the trial court to exercise its discretion, to determine, *inter alia,* whether the need for psychiatric testimony about the credibility of the prosecutrix outweighs the danger of such testimony, and to order the prosecutrix to submit to psychiatric examination. McIntyre did not request this. His trial occurred after the *Ballard* decision. Because he did not request clinical examination, we do not reach the question whether a trial court may, in its discretion, allow a defendant to elicit expert psychiatric testimony based upon hypothetical questions if a prosecutrix ordered to

---

[1] "We do not overlook Judge Jerome Frank's warning against needlessly embarking 'on an amateur's voyage on the fog-enshrouded sea of psychiatry.' (*United States* v. *Flores-Rodriguez* (1956) 237 F.2d 405, 412 [concurring opinion].) A psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly. [Citations.]" (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 174-175, fn. 10 [49 Cal.Rptr. 302, 410 P.2d 838].)

submit to psychiatric examination refuses to cooperate with the psychiatrist. (See *People* v. *Brekke,* 250 Cal.App.2d 651 [58 Cal.Rptr. 854].)

McIntyre contends the trial court erroneously refused to instruct that the jury could consider the timeliness of the children's complaints in determining their truthfulness. In substance, McIntyre wanted the trial court to comment on the possible factual inferences the jury might draw from evidence admitted generally, not for any narrow purpose. Neither authority nor reason suggests a trial court must necessarily attempt to analyze for the jury what the jury might factually conclude from the evidence. McIntyre could have covered this in argument.

McIntyre unmeritoriously claims the district attorney misconducted himself during closing argument. McIntyre declares the district attorney mentioned the inadmissibility of the police report in order to get the jury to believe the prosecution had access to proof outside the record. We quote the district attorney:

"There have been many references made to the police report and the Grand Jury transcript. One of the oldest tricks in the book for use by a prosecutor, I understand, is that whenever that police report is mentioned you jump up and you say, 'We will stipulate that the police report may be received into evidence,' and the defense dives under the bed, because the police report is always the most incriminating thing you have ever seen. It is full of conclusions and incompetent statements by poeple [*sic*] who aren't witnesses. It has thoughts, suppositions, it is not admissible. Counsel knows that. As far as dangling it is concerned, I wish this thing was in evidence, but I know it is not admissible. So, why bother?''

McIntyre neither objected to this statement nor does he put it in context. The record reveals McIntyre defended by building a wealth of psychiatric and psychological evidence tending to show he is not a sexual deviate, and, therefore, could not have committed these crimes. Correspondingly, he played up prosecuting child witnesses' credibility, implying they were thoroughly coached and their testimony differed greatly from what they originally reported to the police. McIntyre argued to the jury:

"We know on August the 2nd she told her mother a story. We don't know what she told her mother and we don't know what her mother told her. We know this is a girl who told a policeman a story. We don't know what she told the police-

man, and we do not know what the policeman told her. We know this is a girl who told a detective a story. We don't know what she told the detective, and we do not know what the detective told her. We know this is a girl who told a story to a Mrs. Peterson. We do not know what she told Mrs. Peterson, and we do not know what Mrs. Peterson told her. We know she told a story before Mr. McIntyre was charged, after Mr. McIntyre was charged, before the Grand Jury, during the Grand Jury, and after the Grand Jury. We do not know what she told them, or what anybody else told her.

"We know one thing: (Name) testified that she told her mother what she told the police. . . .

"I feel that what she told her mother was not what she told the police."

This statement by McIntyre, indicative of his entire defense, implying his belief about how the police report would discredit the prosecution's case, invited the district attorney's response. McIntyre cannot complain.

 McIntyre's other claims of improper argument are similarly specious. The district attorney argued the jury should not be snowed by the quantity of McIntyre's expert evidence. He said, in part:

". . . don't be blinded or don't let a smoke-screen of medical-legal clichés take away your judgment. Remember an old saying also, that even though a lie is very large, if it is repeated enough times it is just as believable as a small one. What is important and what is the truth is for you to decide."

Jumping on the word lie, McIntyre claims by this statement the district attorney called defense witnesses liars and perjurers. This is not true, as revealed by a later remark of the district attorney:

"I don't mean to say that these witnesses for the defense will come in here and lie, but, as I said before, words and thoughts and actions are capable of interpretation and stretching, and you certainly wouldn't expect them to come in here and say, well, yes, I do think he did it, or, I saw him do something, or he is this or that. Friends are there to reenforce your alibi. Of course they are. They are the only ones you can turn to, but they are interested and they are biased and they do have feelings. They are partial, in other words; they are not objective."

The district attorney, in other words, did not improperly comment on the quantity and bias of McIntyre's witnesses.

■ McIntyre contends the district attorney told the jury, in substance, it had two alternatives: find McIntyre guilty or reveal their disrespect for the integrity of county law enforcement. We quote the district attorney:

". . . if you think this is some kind of a plot by the District Attorney and police, then, if you believe that, I would say it is your duty to acquit. And that goes not just for this case but in all cases, if that is what you think of law enforcement in this county."

McIntyre did not object. Later, the district attorney said:

"There was a great deal of mention made about how many times these children were talked to. Now, I am not sure what that is supposed to mean, or what the inference is there that the defendant wants you to draw, but it would appear to me to imply that either these children were somehow, or sometime, told what to say, which goes back to what you believe the purpose of law enforcement is; or that they had to be talked to a number of times before there was any story. Well, they were talked to a number of times by a number of people."

McIntyre did not object. McIntyre later objected to the following:

"The prosecuting authorities don't look upon their task as convicting the innocent. If you believe that, it is your duty to acquit in every case."

McIntyre cannot compound these statements into prejudicial error. His defense, his charge the girls told different stories to the police, raised the question answered by these statements. McIntyre cannot complain.

■ Finally, McIntyre attacks the following argument:

"Help him admit to himself that there comes a time in his life when he has done something that Society just does not permit.

". . .

"Make him admit for the first time that for whatever the reason is he has done it. Society doesn't permit it, and he can't buy his way out of it, and he can't buy his way out of it."

McIntyre argues these comments confused the jury about their function, changing their focus from guilt to help, from proof beyond a reasonable doubt to help. We disagree. The court instructed on the reasonable doubt standard. The comment answered what McIntyre hoped the sum of his evidence

would prove, i.e., the psychiatric, psychological impossibility of his having committed these crimes.

Order affirmed.

Coughlin, J., and Whelan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1968.