[Crim. No. 433. Fifth Dist. June 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. SALVADOR PHILLIP HERNANDEZ, Defendant and Appellant.

George G. Walker for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Arnold O. Overoye, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The appellant, Salvador Phillip Hernandez, was jointly tried with one Felix Ochoa Lerma, Jr.; the charges were all related to the sale or possession of marijuana. After a lengthy trial, the appellant was convicted on count I of a violation of the Health and Safety Code section 11532, to wit, sale of marijuana to a minor, alleged to have occurred on or about September 5, 1966; on count II of the sale of marijuana on or about October 14, 1966 (Health & Saf. Code § 11531); on count III of the sale of the same forbidden substance to a minor on or about October 21, 1966; on count IV with the sale of marijuana to a minor on or about October 28, 1966; on count V with a violation of the same code section 11532 (sale of marijuana to a minor) on or about December 5, 1966; and on count VI with the sale of marijuana on or about December 5, 1966. This last conviction (count VI) was later set aside by the court. Counts VII through XV were directed against the codefendant, Felix Ochoa Lerma, Jr., and related also to violations by him of the Health and Safety Code. The appellant entered a plea of not guilty to all charges made against him. The trial started on June 6, 1967, and continued from day to day until June 14, 1967, when a continuance for one week was ordered by the court because of the death of the mother of one of the jurors. The trial resumed on June 21, 1967, and continued until June 24, 1967, when as heretofore stated Hernandez was found guilty on all counts. The motion for a new trial was denied and the appellant was sentenced to the state's prison for the term prescribed by law, all sentences to be served concurrently.

On this appeal, Hernandez has filed a most comprehensive

set of briefs; in his opening brief, he specified 17 points for reversal, which proved to be actually 16 as his second point and his 16th seem to be identical. Notwithstanding these multiple claims, we find no ground to justify a reversal of the judgment.

■ The first ground specified for reversal is that the evidence is insufficient as a matter of law to warrant the conviction of the appellant, because the testimony of his young friends is the testimony of accomplices which is not supported by other evidence. This major contention fails because Langley and Hoshko were not accomplices as that term is defined under present California law. The argument that the buyer of a narcotic is an accomplice of the seller within the meaning of Penal Code section 1111 is based largely upon the case of *People* v. *Ramirez,* 113 Cal.App.2d 842 [249 P.2d 307]. In the opinion in that case, the Court of Appeal of the Second Appellate District held that the purchaser of a narcotic was an accomplice of the seller even though the applicable code section then read the same as at present. However, the case apparently stands alone in California; to the contrary, there are many cases which hold without equivocation that the purchaser of a narcotic cannot be prosecuted for the same offense as the seller and that, therefore, he is not an accomplice. (*People* v. *Freytas,* 157 Cal.App.2d 706, 713-715 [321 P.2d 782]; *People* v. *Lamb,* 134 Cal.App.2d 582, 585-586 [285 P.2d 941]; *People* v. *Mimms,* 110 Cal.App.2d 310, 314 [242 P.2d 331]; *People* v. *Stewart,* 241 Cal.App.2d 509, 519 [50 Cal. Rptr. 630]; *People* v. *Candelario,* 126 Cal.App.2d 408, 409 [272 P.2d 62]; *People* v. *Abair,* 102 Cal.App.2d 765, 772-773 [228 P.2d 336]; *People* v. *Kinsley,* 118 Cal.App. 593, 601 [5 P.2d 938].)

A different rule has been applied in federal prosecutions for the illegal sale of narcotics based upon the fact that there an accomplice is defined as one who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another in the commission of a crime. (See *Fletcher* v. *United States,* 158 F.2d 321 [81 App.D.C. 306]; *Lett* v. *United States,* 15 F.2d 686, 689; *Egan* v. *United States,* 287 F. 958, 964 [52 App.D.C. 384].) It is obvious that a purchaser of narcotics may be considered an accomplice under such a rule. A standard of this kind formerly obtained in state prosecutions in California (*People* v. *Coffey,* 161 Cal. 433 [119 P. 901, 39 L.R.A. N.S. 704]), but the present rule, which has been in effect since 1915 (Pen. Code, § 1111) established an entirely different test;

under it the young men who purchased marijuana from the appellant could not be prosecuted for selling the forbidden narcotic to themselves. The case of *Lisenba* v. *California*, 314 U.S. 219, 227 [86 L.Ed. 166, 175, 62 S.Ct. 280], makes it clear that the Fourteenth Amendment of the federal Constitution does not prevent a state court from construing and applying its own laws with respect to the evidence of accomplices. Therefore, the testimony of Langley and of Hoshko did not need independent evidence to support it in order to justify a conviction.

It is not urged that there is insufficient evidence if the witnesses who gave the principal evidence against appellant were not accomplices. It is perfectly obvious after perusing the 1,342 pages contained in the reporter's transcript that the evidence is amply sufficient to warrant the conviction if the principal witnesses in favor of the state were not accomplices.

Generally speaking, the evidence showing the guilt of the appellant was given by Ronald Langley and Greg Hoshko. Ronald Langley was 20 years old at the time of the trial; he was then imprisoned in the Deuel Vocational Institute at Tracy after conviction of second degree burglary based upon the theft of money from a veterinary clinic. Incidentally, he has said that this stolen money was used by him to pay for marijuana previously bought from the codefendant, Lerma.

Langley testified that he first met appellant in December of 1965 or January of 1966 at the window manufacturing plant of Air Control, where both worked. Langley then resided in an apartment on West 28th Street in Merced with Gregory Hoshko and Jim Beardsley. The appellant, who was 24 years of age at the time of the trial, first visited in this jointly-leased apartment at the beginning of April 1966. He often bought beer for the occupants. Somewhat later the question of purchase of marijuana was brought up and the first conversation about it was guarded and discreet. The initial purchase of the forbidden weed occurred outside of the apartment at appellant's car in mid-July of 1966, and this sale was followed from time to time by other purchases of matchbox quantities; on several occasions, Langley, Hoshko and Beardsley smoked the marijuana which they bought under the ''G'' Street bridge in Merced.

In August, Langley and Hoshko moved to an address on West 22d Street in Merced where they lived for about one month. Langley was not there frequently, because he was traveling considerably in the Big Sur country, but he did see appellant at the new apartment a couple of times; he had

appellant's telephone number and on at least one occasion bought a match box filled with marijuana from him; at that time, Langley saw the appellant in downtown Merced and asked him if he could get him some marijuana; the purchase was consummated at the apartment two days later. This sale was the basis of count I of the information.

Langley then went to work at Foster Farms about September 1, 1966; while he was employed there, Langley had an income of about $700 a month so that he was able to buy larger quantities than previously. Some of the purchases consisted of "lids" of marijuana which contained five or six match boxes in a sandwich bag. Two specific instances of such purchases were testified to by Langley; they occurred on the first and second Tuesdays of October, which happened to be his paydays. On both occasions, he purchased "lids" from appellant at the Corner Pocket Pool Hall in Merced pursuant to prearranged appointments. At the time of the second purchase there, Louis Lerma was with appellant and the "lid" was obtained from a car which belonged to the codefendant, Phil Lerma. Louis Lerma and Sal Hernandez came over more than once to smoke marijuana with Langley at the East 22d Street apartment.

Langley also recalled being present when purchases of marijuana were made on Fridays in October, or the first part of November, at the East 22d Street apartment where Langley lived until about January 1, 1967. Fridays were paydays for Greg Hoshko so that the money expended at the apartment was usually Hoshko's. The purchases were made in the evenings at around 6 or 7 o'clock after which a "party" would follow.

Greg Hoshko testified, under the circumstances hereinafter referred to, that he and Langley lived together at the East 22d Street apartment for several months. Hoshko was 20 years old in September 1966. He made a practice of purchasing marijuana every Friday in the month of October paying $20 or $25 per "lid." These Friday sales in October related to counts II, III, and IV of the information. In the months of October and November 1966, Louis Lerma, the codefendant's brother began appearing at the apartment. At those times, telephone calls requesting marijuana would still be made to appellant Hernandez, but Louis Lerma would make the deliveries. Phil Lerma, the codefendant, began appearing with Louis around the first of December 1966.

During the last week in November, Louis Lerma asked

Langley if he wanted to buy a large quantity of marijuana. This offer was made, according to Langley's memory, sometime between the 26th and the 30th of November; he fixed the approximate date by the fact that he returned from a visit to Mexico on November 26. Hernandez was present when the offer was made. Langley asked for time to raise additional funds for the proposed purchase of 10 "lids" of the substance for $150, and the deal was deferred until the first week in December. On December 5 or 6 (Langley thought it was the sixth, because that was payday), Langley returned from San Francisco at 9 or 10 o'clock in the morning. The sale occurred, however, at about 6 o'clock in the evening; the marijuana was delivered by appellant, Louis Lerma, and codefendant, Phil Lerma. Langley was eating dinner in the kitchen as they entered through the back door. This transaction was witnessed by Hoshko, who stated that 10 "lids" were involved. This transaction related to counts V and VI of the information. Langley testified that he purchased $300 or $400 worth of marijuana at that time from Hernandez. After Thanksgiving of 1966, there were parties approximately every other weekend at which the participants smoked marijuana.

As a defense, the appellant took the stand in his own behalf and flatly denied selling or furnishing marijuana to minors, or to anyone else, or that he ever engaged in the narcotic traffic. He conceded that he knew both Langley and Hoshko and that he had gone to their apartments at various times. At first he did not recall any conversation with them about marijuana but later admitted that the subject was brought up from time to time probably by Langley. He admitted meeting Langley at the pool hall in Merced with Louis Lerma, but he denied that any transaction involving marijuana took place. As an additional witness for the defendant, Miguel Flores testified that he knew Hernandez well as he had been a schoolmate of his previously. Flores said that he was part of the "chain gang" at Le Grand High School, that is to say, a member of the group which lined the football field there; that Hernandez was an enthusiastic Le Grand football fan and that he remembered seeing him at a game during the period in question. All games were played on Friday nights, at least two being in October; the games started regularly at 8 p.m.

The testimony of Hoshko was not given in person by him before the jury but through a reading of the evidence which he gave at the preliminary hearing. Before the opening of the superior court trial, the deputy district attorney disclosed that Gregory Hoshko had been seriously injured in an

automobile accident shortly prior to the time set for the trial; that he was still unconscious; that no prognosis as to when and if he would recover could be made. The proposal was made to read his testimony given at the preliminary hearing, pursuant to sections 240 and 1290-1291 of the Evidence Code. The appellant's request for a continuance of the trial to a later date because of Hoshko's absence was denied. In support of the proposal of the deputy district attorney thus to introduce Hoshko's testimony, Dr. Earl Eager testified on the first day of the trial that he was a licensed physician and surgeon; after his professional qualifications were stipulated to, he stated that Hoshko was currently a patient of his in the Merced General Hospital and that the doctor had seen him daily since his serious injury at least a week previously. Hoshko, he said, had been unconscious from the date of the accident; his injuries included a broken right femur and a separation and fracture of the pelvis; his left leg was being treated in traction. If Hoshko should recover, which is by no means certain in Dr. Eager's opinion, he will suffer permanent brain damage. He had shown no signs of recovery and even his chance of survival was becoming worse each day because of his continuing deep unconsciousness. The patient could answer no questions and the doctor had no opinion as to how long the unconsciousness would last; he was sure, however, that the patient was not malingering. On the morning of the fourth day of trial, while Hoshko was still unconscious as of 4:30 p.m. of the previous day, the testimony given by him at the preliminary examination was permitted in evidence over appellant's objection.

Formerly, similar testimony in such circumstances could not be introduced unless the witness were dead, insane, absent from the state or could not, with due diligence, be found within the state (former Pen. Code § 686; *People* v. *Bojorquez*, 55 Cal. 463). Penal Code section 686, subdivision 3 subsection (a) now provides: "Hearsay evidence may be admitted to the extent that it is otherwise admissible in a criminal action under the law in this state."

And section 1291 of the Evidence Code is in part as follows: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and;

". . . . . . . . . . . . .

"(2) the party against whom the former testimony is offered was a party to the action or proceeding in which the

testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

Evidence Code section 240 defines unavailability:

"(a) Except as otherwise provided in subdivision (b), [where the procurement or wrong doing of the proponent of the statement is the cause of unavailability] 'unavailable as a witness' means that the declarant is:

". . . . . . . . . . . . . . .

"(3) dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity; . . ."

A statutory basis therefore existed for the reception of the evidence. This common sense rule is widely approved in other states. (See *People* v. *Droste,* 160 Mich. 66 [125 N.W. 87]; *State* v. *McCarty,* 49 N.D. 912 [194 N.W. 335]; *Valentine* v. *State,* 16 Okla. Crim.Rep. 76 [194 P. 254]; *State* v. *Wheat,* 111 La. 860 [35 So. 955]; 29 Am.Jur.2d Evidence, § 738 et seq., p. 807.)

It is argued by appellant without persuasiveness that he did not have a complete opportunity to cross-examine the witness at the preliminary examination, and that the right of confrontation was, therefore, unconstitutionally abridged. The case of *Pointer* v. *Texas,* 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], is cited, but it is interesting to note that in that case the court said at page 407 [13 L.Ed.2d at p. 928]:

". . . The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine. . . ."

McCormick's work on Evidence points out in section 231 at page 482 that actual cross-examination is unnecessary so long as the opportunity therefor existed. In this case, the direct examination of Hoshko at the preliminary hearing covered approximately six pages; he was then cross-examined by Mr. Ellery, the public defender, who represented appellant at the preliminary hearing, for ten pages, and each of the defendants was there represented by separate counsel, both of whom had a full opportunity to conduct a thorough cross-examination under adversary circumstances. (*People* v. *Banks,* 242 Cal.App.2d 373, 378-379 [51 Cal.Rptr. 398].) We hold that the evidence was properly received at the trial.

■ It is next contended that the appellant was prejudiced

by the fact that another defendant, Phil Lerma, was prosecuted for additional marijuana offenses at the same trial. Such contentions were waived by a failure of appellant to object to these circumstances at the trial or to move for a severance before trial. (*People* v. *Stadnick,* 207 Cal.App.2d 767, 774 [25 Cal.Rptr. 30, 99 A.L.R.2d 766] ; *People* v. *Smith,* 185 Cal.App.2d 638, 644 [8 Cal.Rptr. 581] ; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 343 [244 P.2d 750] ; *People* v. *Kemp,* 55 Cal.2d 458, 474 [11 Cal.Rptr. 361, 359 P.2d 913] ; *People* v. *Van Bibber,* 96 Cal.App.2d 273, 274-275 [215 P.2d 106].) No objection was made to the joinder and the question was not raised until counsel suggested it following the sixth day of trial; the objection came too late. Furthermore, it is by no means certain that if an objection had been made it would have resulted in separate trials. The instructions given by the court were calculated to make clear the respective rights of the parties and it is not contended that there was error in the instructions.

■ To constitute a breach of the provisions of section 11532 of the Health and Safety Code, it was necessary for the prosecution to prove that the appellant was over 21 years of age. In order to do this, the state produced a certified copy of his birth certificate which was a public record of Merced County. The trial judge ruled that section 403 of the Evidence Code made it necessary to prove the preliminary fact that the person referred to in the birth certificate was the appellant. Consequently, the court permitted Hector Garibay, the booking officer at the jail, to testify that Hernandez had stated at that time that his birthdate was August 25, 1942. Appellant moved to strike the testimony on the ground that this statement followed an illegal arrest, and that, therefore, it should be eliminated. However, the arrest was legal; the arresting officer was acting upon information given him by the chief of police, and as this came through official channels it was presumed to be reliable. (*People* v. *Melchor,* 237 Cal. App.2d 685 [47 Cal.Rptr. 235].) ■ The further alleged ground for the motion was that the requirements of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], had not been complied with prior to eliciting the birthdate of the defendant. But we hold that the *Miranda* requirements did not apply to this situation inasmuch as nothing was asked of the defendant concerning his alleged crime; there was no process of interrogation "designed to elicit incriminating statements." (*People* v. *Walters,* 252

Cal.App.2d 336 [60 Cal.Rptr. 374].) The simple statement of one's age, which is apposite at a different time and place than the crime of which a defendant is accused and which comes in a different context from the arrest, is not subject to the *Miranda* rationale in circumstances such as existed here.

■ While the prosecutor is accused of misconduct, the accusation seemed to us to be far-fetched and, if applicable at all, not of a nature to require a reversal of the judgment. Appellant called Deputy Probation Officer Daniel Hanog as a witness to impeach evidence introduced by the People; on cross-examination by the state relative to the report which he had filed in the Langley burglary case reference was made to an indication that threats had been uttered against a witness. In view of the fact that the defense used the report, it does not appear why it could not be referred to in the manner complained of on cross-examination. However, the alleged point is not available to the appellant for no motion was made at the time of the alleged error with respect to striking the evidence and no admonition was asked for or entered by the court. (*People* v. *Codina,* 30 Cal.2d 356, 362 [181 P.2d 881]; *People* v. *Lopez,* 124 Cal.App.2d 100, 105 [268 P.2d 171].)

■ Neither is the argument sound that the deputy district attorney argued that the burden of proving innocence shifted to the defendant. The prosecutor said that he had not heard defense counsel say that the defendants were not guilty, but all that was said was that the defendants had not done what they were accused of, and it was further claimed by the defense that the People had not proved their case. This argument for reversal strikes us as rather confused and pointless. There is no error here; if the wording of the argument is a little unhappy and not very clear surely there was no statement or inference that the defendants must prove their innocence.

■ Another argument for reversal is that the deputy district attorney had himself said to the jury that he personally thought the defendants were guilty. We find no such statement in the record. In effect, the deputy district attorney told the jury that if the People had not proved the guilt of the defendants they should go free. This comment of the district attorney was entirely proper. (*People* v. *McIntyre,* 256 Cal.App.2d 894, 903 [64 Cal.Rptr. 530].)

■ Also, it is urged that when the district attorney asked a temporary cellmate of appellant, one Robert Wayne McDaniel, on rebuttal whether he had had any conversation with Mr. Hernandez regarding a sale of anything by the lat-

ter, the court sustained an objection to the question and no testimony was given in response to the question.

There was no evidence that the witness McDaniel was placed in appellant's cell as an agent of the police. In the absence of this fact no violation of appellant's rights would have been shown even if an answer had been permitted. (*People* v. *Hays,* 250 Cal.App.2d 96, 98 [58 Cal.Rptr. 241]; *People* v. *Bowman,* 240 Cal.App.2d 358, 371 [49 Cal.Rptr. 772].) There is no basis for concluding that the purpose of counsel in asking the question was to take unfair advantage of the appellant by intimating something untrue or incapable of being proven.

Appellant objects to the fact that during the testimony the court took a recess following the noon break on the sixth day of the trial (Wednesday, June 14) to the following Wednesday, because one of the jurors had suffered the loss of her mother. This action was within the discretion of the trial court. (*People* v. *Bourland,* 247 Cal.App.2d 76, 90 [55 Cal. Rptr. 357].) It is customary to observe the requirements of family duty on the part of officers of a court; the death of a mother of one of the jurors is of such moment that it should properly be observed by a reasonable continuance within the court's discretion unless some other means of proceeding without a break in the trial is possible. The court inquired whether defense counsel was willing to proceed with eleven jurors only, and there was a refusal to so stipulate. As the action of the trial judge was within the area of his discretion (*People* v. *Morris,* 226 Cal.App.2d 12, 15 [37 Cal.Rptr. 741]) no error was committed through the order made by it. (See also *Byrnes* v. *United States,* 327 F.2d 825; *State* v. *Hopple,* 83 Idaho 55 [357 P.2d 656].)

The evidence admitted concerning statements made by the witness Langley at a time well prior to the testimony given by him at the trial was for the purpose of rehabilitation by showing that he was not testifying at the trial from improper motives of interest or improper influences by the state with the hope of reward on the burglary charge. Contrary to appellant's statement, Langley was asked whether he did or did not make these prior statements consistent with his present testimony. The prior consistent statements were made before the existence of any possible motive to falsify. (*People* v. *Neely,* 163 Cal.App.2d 289, 311 [329 P.2d 357]; *People* v. *Kynette,* 15 Cal.2d 731, 753 [104 P.2d 794], which latter case was overruled but on other grounds.) The evidence in ques-

tion was properly received (Witkin, Cal.Evidence (2d ed. 1966) § 1279, p. 1182; Evid. Code, § 791, 1236).

In his briefs, the appellant claims that there was an erroneous delay of the prosecution between the alleged commission of the offenses and the trial and that it operated to his prejudice. It does not appear, however, that there was any undue or improper delay in the course of appellant's prosecution. He was arrested February 7, 1967; the complaint in the justice court was filed February 8, 1967. The first indication in the record that appellant was suspected of illegal activity occurred subsequent to February 1, 1967, when Ronald Langley was arrested on a burglary charge which was not related to the present prosecution. The record shows that after Langley's release on bail on February 2, 1967, he conferred with his attorney William O. Minor and, after talking with him, the district attorney agreed that Langley would not be prosecuted for narcotic activities if he should disclose information which formed the basis of the charges against the appellant. Thus, the facts of the present prosecution were unknown to the authorities until approximately one week before the arrest of the appellant. The charges were thereafter prosecuted to judgment well within legal limits.

The argument is made that the testimony of the witness Steve Tatum was improperly admitted because his guilty plea was inadmissible to prove the commission of the crime of which the appellant was charged. In the first place, Tatum did not testify with respect to the charges against the appellant, Hernandez, but only as to the criminal accusations against appellant's codefendant, Phil Lerma. Tatum was not jointly charged with Hernandez and his testimony was not sought to prove that a crime was committed by appellant. The fact that Tatum entered a plea of guilty was only shown by the cross-examination of defendant Lerma's attorney. There was no error here.

The complaint that the trial court did not on its own motion segregate the place of imprisonment in the jail of the witnesses McDaniel and Langley at all times prior to the trial cannot be upheld as an error. An order segregating the two was in fact made by the court upon motion of the appellant. This motion was the first notice that the trial court had that the witnesses were being held in the same cell. While it was perhaps out of excess of caution, the trial court had the right to direct the sheriff to keep witnesses separated while in jail;

this is entirely discretionary, and no error appears in the present instance.

 Appellant questions the constitutionality of Penal Code section 1203, paragraph 5, which requires the concurrence of the district attorney with the views of the court before a grant of probation may be made to a person who is otherwise ineligible as provided in paragraph 4. The record on appeal does not contain the probation report and it does not show either directly or by inference that probation was denied because of the nonconcurrence of the district attorney. Assignments of error not shown by the record and supported only by statements in the appellant's brief cannot be considered by an appellate court. (*People* v. *Boyce,* 183 Cal.App.2d 763 [6 Cal.Rptr. 859].) Furthermore, it does not appear that appellant is a person described by paragraph 4 of Penal Code section 1203. The matter is entirely hypothetical or moot and in the present context does not require a ruling.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.